EDWIN P. HILTS, Respondent, v. UNITED STATES CASUALTY COMPANY, Appellant.

St. Louis Court of Appeals, July 16, 1913.

1. HEALTH INSURANCE: Accident Insurance: Disease or Accident: Policy Construed. A health and accident policy consisted of two distinct parts, one insuring against accident, and the other providing certain indemnities in case of disease, including an indemnity for surgeon's fees for a surgical operation for abdominal hernia. The accident portion contained no provisions for any indemnity for such an operation. *Held*, that the policy itself classified hernia as a disease or the result of a disease, and not the result of an accident, and hence the insurer was estopped to contend that it was the result of an accident, however it might be classified by medical experts.

2. ――――: Defenses: Commencement of Disease. Where a health policy insured against an abdominal hernia requiring a surgical operation and confinement at a hospital or at insured's home, and insured had no such a hernia at the time the policy was issue to him, although he may have had a predisposition to hernia, or although the inguinal ring may have been weakened, causing the subsequent development of the hernia, the insurer was liable, notwithstanding the policy limited liability to illnesses commencing after its date, since the disease, in the form insured against, was not in existence at the time the policy was issued.

3. APPELLATE PRACTICE: Conclusiveness of Verdict. Where a case is tried on the theory that a certain question involved is one to be determined by the jury, and evidence is adduced *pro* and *con* on such question, the finding of the jury thereon is conclusive on appeal.

4. HEALTH INSURANCE: Defenses: Misrepresentations. Several months after plaintiff was operated upon for appendicitis, in accordance with a request previously made by his physician, he again visited the physician, mentioning to him a peculiar sensation, which the evidence tended to show was one of the first signs of hernia. The physician at that time noticed no indications of a hernia. Soon thereafter, plaintiff applied for health and accident insurance, and in his application mentioned the operation, but, in answer to a question as to having consulted a physician, failed to mention the visit in question. *Held*, that plaintiff did not falsely answer the question regarding having consulted a physician, within the meaning and intendment thereof.

5. ———: ———: ———: **Instructions.** In an action on a health insurance policy, defended on the theory that insured was suffering from a hernia at the date of the policy, there was medical testimony that, at that time, there may have been a predisposition to hernia, or such a condition as would likely result in its development, although it was not then in existence. At the instance of plaintiff, the court instructed that there might have been premonitory symptoms of, or a predisposition to hernia which had not arrived at the stage of being the disease itself, and that mere premonitory symptoms or predispositions should not be regarded as the existence of the disease. On appeal, the instruction was attacked by defendant on the ground that it was misleading, in that "a 'symptom' of a disease is not a forerunner or warning of a disease liable to develop, but an evidence of a present existing trouble." *Held*, that the instruction could not have misled the jury, and hence was not reversible error.

6. **INSTRUCTIONS:** Construction. An instruction is to be viewed in the light in which it would be understood by a jury.

Appeal from St. Louis City Circuit Court.—*Hon. W. M. Kinsey*, Judge.

Affirmed.

*Ellerbe & Brokaw* for appellant.

(1) The court erred in refusing to give the two peremptory instructions, in the nature of demurrers, offered by the defendant at the close of the plaintiff's and at the close of the entire case. (a) The policy insured only against illnesses commencing after the date upon which the policy was issued. The evidence indisputably showed that plaintiff was suffering from the hernia prior to the date upon which the policy was issued. (b) The evidence indisputably showed a breach of warranty in that at the time plaintiff applied for the policy he was suffering from a disorder, defect and deformity, namely, hernia, and that he had consulted a physician other than the time mentioned in his application. (2) The court erred in giving the following instruction No. 1 in behalf of the plaintiff. (a) This instruction submits a hypothesis unsup-

ported by the evidence as a predicate of liability. There was no evidence in the case that the peculiar sensations felt by plaintiff prior to the date of the issuance of the policy were mere premonitory symptoms within the meaning of that phrase as used in the above instruction. Bell v. Realty Co., 163 Mo. App. 367; Real Estate Co. v. French, 160 Mo. App. 678. (b) The instruction was erroneous in that it assumed as true material facts that were in issue. Bratton v. Porter, 151 Mo. App. 408; Mining Co. v. Fidelity & Casualty Co., 161 Mo. App. 135. (c) The instruction is erroneous in that it singled out one bit of evidence and indicated the opinion of the trial judge on that evidence. James v. Insurance Co., 135 Mo. App. 247; Spohn v. Railroad, 87 Mo. 74. (3) The court erred in refusing to give instruction No. 1 offered in behalf of the defendant. There was both expert and other evidence in this case that hernia was the result of an accident. If the result of an accident, the plaintiff was not entitled to recover, in an action brought on a policy of health insurance. Summers v. Aid Assn., 84 Mo. App. 605; Accident Assn. v. Alexander, 104 Ga. 709; Miller v. Fidelity & Casualty Co., 97 Fed. 836; Driscoll v. Insurance Co., 117 Mo. App. 362; Fetter v. Fidelity & Casualty Co., 174 Mo. 256.

*Robert M. Wilson* for respondent.

(1) Was there any evidence that the hernia was a disease or the result of a disease? If so, it was a question for the jury. On a demurrer to the evidence, the court must indulge every inference of fact in favor of the party offering the evidence, which a jury might indulge with any degree of propriety. Heine v. Railroad, 144 Mo. App. 443. (2) The evidence did not prove, as contended by appellant, that respondent had contracted a disease (hernia) within the contemplation of the policy prior to the issuance of said policy. (3) The evidence did not show a breach of warranty as to

consultation with or treatment by a physician at any time other than the time reported in application for the policy. Harris v. Knights and Ladies of Honor, 129 Mo. App. 163; Winn v. Modern Woodmen, 138 Mo. App. 701; Black v. Ins. Co., 129 Fed. 732; Ins. Co. v. Dobler, 137 Fed. 155. (4) Insurance policies will be construed strictly against the insurer. Canning Co. v. Guaranty & Accident Co., 154 Mo. App. 327; Foglesong v. Modern Brotherhood, 121 Mo. App. 548. (5) Misstatements in the notice of injury (or disease) of plaintiff and proof of same as to how accident occurred do not relieve the company where it is liable under the true facts. Continental Cas. Co. v. Jennings, 99 S. W. 423. 4 Cooley's Briefs on Insurance, p. 3471.

ALLEN, J.—This is an action to recover certain indemnities under a policy of health insurance issued by the defendant to plaintiff on November 7, 1908, providing for an indemnity for certain losses enumerated in the policy caused exclusively and directly by any disease or illness while the policy should be in force. The policy further provided for the payment to plaintiff of a certain amount for loss of time while confined in a hospital or at his residence, etc., and contained the further provision that, if the disease or illness should necessitate any of certain enumerated surgical operations, an additional indemnity of a certain amount as for surgeon's fees would be paid. Among these enumerated operations was a "cutting operation for a radical cure for abdominal hernia;" an indemnity of $200 being provided for surgeon's fees for such an operation.

The plaintiff alleges that he contracted a disease or illness, within the terms of the policy, to-wit, an abdominal hernia, by reason of which an operation upon him became necessary and was performed; that he was confined in a hospital for a period of thirty-seven days, and thereafter confined within his resi-

dence for a period of fourteen days, after which he was convalescent for a period of eight days; plaintiff's claim being for the sum of $200 for surgeon's fees, as provided in the policy, the sum of $214 indemnity for loss of time while confined within the hospital, $100 for loss of time while confined within his home, and the further sum of thirty-four dollars for loss of time during convalescence.

The defenses set up in the answer of which we need take notice were that hernia was not a disease, or the result of a disease, within the meaning of the policy, but that it resulted directly from external, violent and accidental means; that the hernia in question was not contracted while the policy was in force, but that it existed prior to the application therefor; and that plaintiff was guilty of a breach of warranty with respect to the statements made by him in the application for the policy.

The cause was tried before the court and a jury, resulting in a verdict and judgment for plaintiff for $563, and the defendant has duly prosecuted its appeal to this court.

The evidence discloses that the plaintiff, at the time of the trial, was a young man twenty-nine years of age, of good general health and physique, and accustomed to athletic exercises of various sorts; that in March, 1908, he was operated upon by Dr. Ernst Jonas of the city of St. Louis, for appendicitis, from which he completely recovered; that, during the latter part of the summer of 1908, he had at times a dragging, drawing or numb sensation in the right groin, some three inches below the appendicitis scar, which sensation it seems he felt for the first time after climbing a tree; that the plaintiff returned to the city of St. Louis in the latter part of September or the first part of October of that year, and that, in accordance with a request previously made by his physician, Dr. Jonas, he called upon the latter to be examined, at which time

he told his physician of the peculiar sensation in the region above mentioned. It appears that his physician noticed no indications of a hernia at that time; that more than a month thereafter the plaintiff was solicited by the resident manager of the defendant to take out a policy of the nature of that here sued upon, as he had been theretofore solicited to do; and that he did make application for the policy, which was issued to him on November 7, 1908. It seems that the plaintiff at times thereafter felt a sensation in his right groin, of the same sort as mentioned above; that, on or about April 1, 1909, he noticed a bulging in the right groin, and thereupon went to consult his physician, Dr. Jonas, by whom he was informed that he had a right inguinal hernia, and that an operation was necessary. This operation was performed on April 7, 1909, at the Jewish Hospital in the city of St. Louis, necessitating the loss of time claimed for in the petition.

The appellant insists that its demurrer to the evidence should have been sustained. This assignment of error is predicated upon the idea that the plaintiff was suffering from the hernia prior to the date upon which the policy was issued, whereas the policy insured only against illnesses commencing after such day; and is based upon the further ground that the evidence showed beyond dispute a breach of warranty, in that plaintiff, at the time he applied for the policy, was in fact suffering from the hernia, whereas he stated in the application that he was free from any "functional or organic disease, mental or physical disorder, defect," etc., and in that he had consulted a physician at a time other than that mentioned in his application.

As the learned trial judge states in his memorandum filed in overruling defendant's motion for a new trial, there were false issues raised in the case below. One of these was whether the hernia in question was due to accident or disease. Much of the testimony of the learned medical experts who testified in

the case was directed to this issue. There was ample evidence to support plaintiff's contention that hernia is regarded by our learned medical brethern as a disease rather than as the result of accident, but their testimony as to this question was quite beside the case. It matters not to what extent medical experts may differ in their opinions with respect to this question, for the reason that the policy sued upon classifies hernia as a disease. The policy consists of two distinct parts, one portion thereof insuring the plaintiff against accidents and the other providing certain indemnities, etc., in case of disease or illness. In the health portion of the policy the defendant agreed to indemnify plaintiff in the sum of $200 as for surgeon's fees for a surgical operation for a radical cure for scrotal or abdominal hernia. The accident portion of the policy contained no provision for indemnifying the insured in any way for such an operation. It therefore follows that, regardless of the medical views on this question, the parties must be understood as having contracted with respect to this question with the understanding that hernia was to be classed as a disease, or the result of a disease, and not as the result of an accident. The defendant is therefore estopped to now say that hernia is something other than as clearly classified by it in the policy which it issued to the plaintiff.

The other issue to which the learned trial judge refers in his memorandum relates to the question of when the hernia can be said to have begun, and the effort to distinguish between incipient, incomplete and complete hernia. It is appellant's contention that the plaintiff was, as a matter of fact, suffering from the hernia at the time that he felt the dragging and numb sensation in his right groin while away on his vacation in the summer of 1908; that the disease, (regarding hernia as such) had its beginning prior to the

176 Mo. App. 41

issuance of the policy, and was not therefore contracted while the latter was in force. On this question, as the case was tried, there was again ample testimony, by way of opinion evidence, from which the jury might well have found that, medically speaking, no hernia existed until there was a protrusion. There was testimony that the dragging sensation mentioned was one of the first signs of hernia, and that such is regarded as the first stage of hernia; but, as we have said, there was abundant evidence that such a disorder is not regarded as a hernia until there is a protrusion of some part of the viscera from its normal position through an opening in the cavity in which it is contained. In regard to this question there was much medical testimony respecting the different stages of hernia, viz., incipient, incomplete and complete. It would seem, however, that this question is set at rest by the terms and conditions of the policy. The policy insured the plaintiff against a hernia such as would require a surgical operation for its cure, requiring him to be confined at a hospital or at his home. It is not disputed that plaintiff developed such a hernia on or about April 1, 1909, and for which he underwent a surgical operation. There is no suggestion that he had such a hernia at the time that the policy was issued to him, though it may be that plaintiff had a predisposition to hernia or that by violent physical exertion, prior to the issuance of the policy, the inguinal ring was weakened, causing the hernia to subsequently develop.

From the testimony it appears that one may have what is called incipient hernia, or a predisposition thereto, without being conscious thereof; and that one may have what the medical experts call incomplete hernia without its existence being readily discoverable, if discoverable at all, except by a medical expert. And it further appears that either of the above stages may exist, without complete hernia ever developing. By

the terms of the policy it clearly appears that no liability arose under it unless and until the final stage was reached and a complete hernia developed. It cannot well be said, therefore, that the disease against which the plaintiff was insured, and on account of which he now seeks to recover, was in existence at the time that he applied for the policy and when the latter was issued to him. So the trial judge correctly states in his memorandum.

However, the case was tried upon the theory that this question was one for the determination of the jury, under the expert testimony adduced *pro* and *con* thereon. This testimony was ample to warrant a finding that the hernia was not in existence at the time of the issuance of the policy, within the meaning of its terms, and we are concluded by the verdict of the jury with respect thereto. What we have said disposes of the alleged breach of warranty by plaintiff, in that he was suffering from the hernia when he applied for the policy, so far as concerns the demurrer to the evidence.

As to plaintiff not having revealed the visit to his physician upon his return from his vacation in the autumn of 1908, it seems that this visit was made in compliance with a previous request by the physician, who evidently thought it advisable to see and examine plaintiff at that time because of the prior operation for appendicitis. The latter was fully revealed by plaintiff; and it cannot be said that he falsely answered the question regarding having consulted a physician, within the meaning and intendment thereof.

We think that the demurrer was well ruled.

Error is assigned with respect to an instruction given for plaintiff which told the jury that there may have been "premonitory symptoms of or a predisposition to hernia in plaintiff which had not arrived at a stage of being the disease itself;" and that "mere premonitory symptoms of or a predisposition to

hernia in plaintiff should not be regarded as the existence of the disease itself," etc. This instruction is assailed upon the ground that a "symptom" of a disease is not a forerunner thereof, or a warning of a disease likely to develop in the future, but an evidence of a present existing trouble. The instruction, however, is to be viewed in the light in which it would be understood by the jury; and we think that the jury could not in any wise have been misled thereby. It was intended by this instruction to tell the jury that there may have been a predisposition to hernia, or such condition existing as would likely result in the development of a hernia, though the latter be not then in existence. This is supported by the medical testimony, and accords with the terms of the policy which indemnified against an actual or complete hernia requiring a cutting operation for a radical cure therefor. The giving of this instruction could not have been reversible error.

The appellant complains also of the refusal of the court to give an instruction offered by it to the effect that if the jury believe from the evidence that the hernia was the result of an accidental injury, or was produced by external, violent or traumatic force, and not the result of a disease, then the plaintiff was not entitled to recover. That this instruction was properly refused follows from what we have said above. The defendant having in the contract classified hernia as a disease, and indemnified against it as such, it could not assume a position inconsistent therewith.

The instructions taken as a whole were quite as favorable to the defendant as it could require. There appears to be no dispute as to the duration of the disability of plaintiff, and the amount of the verdict is not complained of. We see no reversible error in the record, and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.