WILLIAM J. KNIPE, Appellee, v. SKELGAS COMPANY, Appellant.

No. 45306.

DECEMBER 10, 1940.

REHEARING DENIED MARCH 21, 1941.

Shull & Marshall, for appellant.

Cornwall & Cornwall, for appellee.

MITCHELL, J.—This is a workmen's compensation case. In the latter part of July 1936, the claimant, William J. Knipe, 25 years of age and residing with his father and mother in Armstrong, Iowa, applied to C. B. Slemp, the manager of the Spencer office of the Skelgas Company, for a position with that Company, and Mr. Slemp assisted the claimant in making out an application for employment.

Sometime later the claimant was called back to the Spencer office and a written contract of employment was entered into between himself and the Company. The work for which the claimant was employed was the selling of Skelgas in the country surrounding Spencer and Butane gas in Spencer. In the office it was his duty to go through the records of the Company to ascertain who was using Skelgas and to become acquainted with them, both in Spencer and in the territory around Spencer. He also, on occasions, worked in the office where the Company maintained a display room and assisted in collecting bills and taking care of customers who called at the office. His territory around Spencer was bound by the location of the users who were serviced with Skelgas out of Spencer. His duties were to call on persons living in Spencer and endeavor to sell them gas which was manufactured by the Spencer plant and piped to users in the town, and to sell Skelgas in containers to users in surrounding towns and territory. During the time he worked for the Company, he operated at Milford, Spirit Lake, Lake Park, Hartley, and other towns from 12 to 45 miles from Spencer.

On the morning of July 17, 1937, the claimant drove his car to the Company's office as usual. He had a conversation with the manager of the Skelgas Company as to what he was going to do that day. Knipe left the Company's office, having in mind to see a man by the name of Davidson who had recently been married and was believed to be a prospect for a Skelgas stove. He went to the airport in Spencer because Davidson owned an airplane, which he sometimes kept at the Spencer airport. There he met C. B. Slemp, who formerly was the manager of the Skelgas Company, and with whom Knipe had originally made his application for employment. Slemp was the owner of an airplane which he had used for some time. It was the same plane he owned and used when he was manager of the Spencer office of the Skelgas Company, and had used it in flying to Kansas City to attend to business connected with the Skelgas Company.

Slemp told Knipe that he was going to go to Laurens (a town about 40 miles southeast of Spencer) and to Peterson (a town about 25 miles southwest of Spencer) and asked Knipe

if he had any business at either place and offered to take him in his plane. They went to both Laurens and Peterson and Knipe saw and talked with prospects for Skelgas outfits at both places. They took off from Peterson, and for some reason, not explained in the record, after the airplane was in the air, the engine stopped and the plane fell. Knipe was injured, suffering a fractured skull and a broken leg. He was unable to resume work until October 1, 1937. He filed an application for arbitration under the Workmen's Compensation Act, alleging that his injuries arose out of and in the course of his employment. The employer filed answer. There was a hearing and an award was entered allowing him compensation for 40 weeks plus medical and hospital benefits. A petition for review was filed and the industrial commissioner affirmed the award. The Skelgas Company appealed to the district court of Clay county, and the matter was submitted to the Hon. G. W. Stillman, one of the district judges, who after a hearing entered his order and judgment affirming the decision and award of the commissioner. The Skelgas Company being dissatisfied has appealed to this court.

We quote from appellant's brief:

"The whole question in this case is whether the injury to the claimant who was injured by reason of riding in an airplane on July 17, 1937, arose out of and in the course of his employment or was he then engaged in an act unauthorized, unintended and not a natural incident of his employment so that such act was beyond the scope of his employment."

It is the contention of the appellant that the case at bar is controlled by the case of Christensen v. Hauff Bros., 193 Iowa 1084, 188 N. W. 851. In the Christensen case the deceased was standing in the door of his employer's place of business; he saw the train at the station; it was pulling out; he ran across the street; he ran along the side of the train opposite a flatcar which was three or four cars ahead of the caboose; the flatcar was not equipped with handles or rail holds to assist in boarding the car; he placed his hands on the flatcar and tried to swing aboard; there was a caboose at the end of the train and the conductor had told him to go down and get on that car; the caboose was equipped with steps and handrails and was only two or three

cars behind the flatcar which deceased attempted to board, and if he had fallen from the caboose it would have been back of the train where the danger was not so great. There was no excuse or reason for deceased attempting to board the flatcar as he did. On page 1090 of 193 Iowa, page 854 of 188 N. W., the court said:

"Upon what reasonable basis may it be assumed that this workman, as a requirement of his occupation, was in any degree justified in the attempt to board the train as he did instead of going into the caboose? * * * The caboose afforded convenience and safety to the passengers. There were convenient steps and side rails for the grip of the hands in boarding the caboose. We cannot say with certainty, that, if Christensen had attempted to board the caboose, he would have accomplished it in safety. To make such an assertion would be purely prophecy. He was a young man of physical activity beyond the ordinary. If he had attempted to enter the caboose, he would have found steps for entrance and rails to take hold of. If, perchance, he failed to gain the steps or to get hold of the rails, he might have fallen, and sustained in some measure personal injury. But it can scarcely be presumed that such injury would be very serious, because the entrance to the caboose was behind the wheels. * * * There was no justification for Christensen's attempt to board the freight train by mounting the flatcar in a most unusual manner, and for reasons wholly unjustifiable."

With the above statement from the cited case in mind, let us look at this record.

Knipe was employed by the Skelgas Company under a written contract. He was to devote his entire time and best efforts to further the interest of the Skelgas Company.

Aside from his general office work, it was his business to solicit customers in Spencer and adjoining territory. There was no particular time when he was to visit his prospects or definite place he was to go each day. He devoted his entire time and attention to the Company's business, under the supervision and direction of its officers. His compensation was fixed at $50 per month plus a commission on merchandise sold. He was to furnish his own automobile and the Company was to carry the public liability insurance on same.

The contract of employment contained the following paragraph:

"That he hereby acknowledges notice from the Company that the Company is subject to and is operating under the Workmen's Compensation Law of the state in which he is working or in any other state in which he may be engaged in the services of the Company, and he, as such employee of the Company, hereby accepts and makes himself subject to the provision of such Compensation Law. In no event shall the Company be liable under more than one Compensation Law."

Certainly, under the above-quoted paragraph of the employment contract, the Company considered him an employee, within the provisions of the Workmen's Compensation Act, and the claimant was bound by the contract and did make himself subject to the compensation law. The Skelgas Company had the right to discharge him at any time without cause.

The only contention that the appellant makes is, that when Knipe entered the airplane, that such means of transportation was not contemplated. That he went beyond the scope of his employment, when he used a method of conveyance that was not even authorized or contemplated. That the riding in the airplane was a rash act, similar to the jumping on to a flatcar in a moving train, as in the Christensen case.

The contract of employment did not limit the means of transportation that Knipe was to use. He was to provide an automobile, but there was no limitation placed on any other means of transportation. That in going to Laurens and Peterson he was engaged in Company business cannot be denied under this record.

The pilot was duly licensed by the United States Federal Government and could fly any place and could carry passengers, but not for hire.

The application which appellee signed, seeking employment with this Company, contains some very interesting statements.

"We want only employees who have the physical and mental qualities to produce results. We need hustlers; men and women who are aggressive. Skelly employees must be wide-awake, alive to every opportunity, progressive.

"Our employees must be able to develope new ideas. They must possess initiative, combined with good judgment. We want employees who are unafraid of difficulties, who do not become easily discouraged, who have sufficient stick-to-itiveness and persistence to overcome obstacles, who are resourceful."

Here was a Company that wanted employees who were "aggressive, wide-awake, alive to every opportunity, progressive", who could "develope new ideas", who were "unafraid of difficulties". Each employee "must plan his day's work to produce the greatest returns from the time spent on each job." They were required to be "courageous" and "eager to try new ideas and plans" to promote the business. And yet in face of the requirements of this Company, that its employees must be able "to develope new ideas", it now seeks to escape liability by saying that riding in an airplane was such a hazard that it was not contemplated by the employment contract—that it is similar to a man attempting to jump on to a flatcar in a moving train.

With this we cannot agree. The same argument might have been made when the automobile first came into use—that it was a rash act for one using a horse and buggy to ride in a motor driven vehicle.

Lately the writer of this opinion saw statistics covering airplane travel. In 1926, the first year of scheduled flying in this country, 5,782 brave souls traveled in small single-engine planes.

In 1940, giant multi-motored airplanes will carry more than two and a half million men, women, and children.

Air travel today is a commonplace mode of transportation, and the appellee cannot be said to be guilty of a rash act, in furthering the appellant's business in traveling by airplane to call upon prospective customers. Knipe's injury arose out of and in the course of his employment. He was entitled to the benefits of the Workmen's Compensation Act, and the lower court was right in so holding.

It is next contended that the appellee was not an employee of the Skelgas Company, but was an independent contractor and not entitled to compensation. This court has recently in the case of Heintz v. Iowa Packing Co., 222 Iowa 517,

268 N. W. 607, reviewed the authorities covering this very troublesome question. See, also, Towers v. Watson Bros., 229 Iowa 387, 294 N. W. 594.

The appellee in the case at bar was employed under a written contract, which provided that he was to devote his full time to promoting the best interest of the appellant. He was to receive $50 per month plus commissions. The price for which the product sold was fixed by the Company. He worked under the direction of the officials of the Spencer office, and was required to do what they directed. The Company had the right to discharge him at any time.

In addition thereto, and which would appear to be conclusive on the proposition now under consideration, the employment agreement further provides that the Company is subject to and is operating under the Workmen's Compensation Act of the state in which the representative is working or any other state in which he may be engaged in the service of the Company, and that he, the claimant, as such employee of the Company, hereby acknowledges and makes himself subject to the provisions of such compensation law and in no event shall the Company be liable under more than one compensation law. Appellant has not explained how the parties may operate under the compensation law, but at the same time be relieved from liability on the grounds of an alleged independent contractor.

Finally it is argued that the right of recovery is barred because claimant did not comply with section 1383 of the 1939 Code, requiring the giving of notice.

Section 1383 of the 1939 Code is as follows:

"1383 Notice of injury—failure to give. Unless the employer or his representative shall have actual knowledge of the occurrence of an injury, or unless the employee or someone on his behalf or some of the dependents or someone on their behalf shall give notice thereof to the employer within fifteen days after the occurrence of the injury, then no compensation shall be paid until and from the date such notice is given or knowledge obtained; but if such notice is given or knowledge obtained within thirty days from the occurrence of the injury, no want, failure, or inaccuracy of a notice shall be a bar to obtaining compensation,

unless the employer shall show that he was prejudiced thereby, and then only to the extent of such prejudice; but if the employee or beneficiary shall show that his failure to give prior notice was due to mistake, inadvertence, ignorance of fact or law, or inability, or to the fraud, misrepresentation, or deceit of another, or to any other reasonable cause or excuse, then compensation may be allowed, unless and then to the extent only that the employer shall show that he was prejudiced by failure to receive such notice; but unless knowledge is obtained or notice given within ninety days after the occurrence of the injury, no compensation shall be allowed.''

Under the statute, written notice is not necessary, if the ''employer or his representative shall have actual knowledge of the occurrence of an injury''. In the case at bar the manager of the Spencer office of the Skelgas Company knew of the accident the very day it happened. Within a week after the accident, the father of claimant called upon the manager of the Skelgas Company at Spencer, and the manager told him, according to his evidence, that he had reported the injury to the appellant Company's main office.

What more could possibly be required? The only purpose of the statute is to enable the employer to investigate the facts relating to the injury. Notice to or knowledge of the Spencer manager is knowledge on the part of the employer.

Appellant cites the case of Mueller v. U. S. Gypsum Co., 203 Iowa 1229, 212 N. W. 577. In that case the opinion clearly shows that the employer did not have knowledge of the alleged occurrence until a long time after the expiration of the 90-day period. In the case at bar the Company's representative knew of the accident within a few hours after it occurred, and according to the record reported it to his superior officers.—Affirmed.

RICHARDS, C. J., and HALE, HAMILTON, BLISS, SAGER, STIGER, OLIVER, and MILLER, JJ., concur.