GLADYS FORD et al., Claimants, Appellees, v. DEWEY GOODE, DEAN GOODE and DORAN GOODE doing business as GOODE PRODUCE COMPANY et al., Appellants.

No. 47446.

(Reported in 38 N. W. 2d 158)

1220

JUNE 14, 1949.

REHEARING DENIED SEPTEMBER 23, 1949.

Paul Proctor and Buell McCash, both of Bloomfield, for appellants.

Donald W. Harris, of Bloomfield, for appellees.

MULRONEY, J.—The defendant company bought skins and carcasses of fur-bearing animals. They employed Clyde Ford who skinned animals and stretched the hides. Mr. Ford worked with a slight cut or scratch on one finger. He became sick and the last day he worked was November 19, 1947. The cut developed into an "indolent ulcer", described by the doctor as a manifestation of tularemia and he developed all the other symptoms of tularemia and died of that disease on December 3, 1947. His dependent widow and daughter obtained an award for death benefits under the Workmen's Compensation Act from

the industrial commissioner, who found Mr. Ford injured his finger in the course of his employment and that he contracted tularemia through this cut while skinning and stretching furs. The trial court affirmed, holding it was immaterial where Mr. Ford received the cut on his finger. In the course of his opinion the trial court stated:

"The scratch on the finger made the deceased susceptible to the infection if exposed to it. But the scratch did not cause the death. That he had the scratch is established by direct testimony as is the fact that he continued in the employment for some days after having the scratch. The employment is shown without dispute to be one in which one might be exposed to tularemia and the way in which it might be contracted. It is shown that tularemia would reasonably develop within three to five days from the time of contact with the germ. No one could possibly know when he contacted the germ. It might be at the instant he got the abrasion, or it might be any day thereafter. The fact that the scratch was covered with gauze and taped would not necessarily preclude him from contracting the disease through the wound. Especially is this true if he engaged in skinning an infected carcass and came in contact with blood or fluid from the body. It was the opinion of the doctors who testified that the deceased contracted the disease while engaged in the company's work. The commissioner's finding has ample support in the evidence."

The question of whether or not Mr. Ford received the cut or scratch on his finger in the course of his employment turns upon the admissibility of testimony of the widow and doctor as to what the deceased told them. We ignore this branch of the case for we agree with the learned trial court's view that it is immaterial whether he sustained the trifling cut or scratch in his employment or elsewhere. There is ample evidence that he did work at skinning animals, with a gauze bandage over his cut finger. The doctors testified that the ulcerated sore on this finger was a manifestation of tularemia. They said that the usual mode of contracting tularemia is by handling or dressing animals and that nearly all wild rodents have tularemia, such as rabbits, ground squirrels, skunks, racoons, minks and

muskrats. They said it is more likely to develop if there is an open break in the skin while handling the animals. Dr. Fenton who first treated Mr. Ford said that he had all of the symptoms of tularemia all of the time he observed him and that the point on the finger where he observed the ulcer was the point of entry of the infection which resulted in his death. Dr. Morgan of the Iowa City hospital where Mr. Ford was taken shortly before his death said it was his opinion that Mr. Ford "contracted the disease skinning animals, fur-bearing animals * * *" and this "was contracted through the skin by an abrasion * * *." He said: "There are no proven cases of the disease being contracted through the air."

I. The great majority of Workmen's Compensation Acts are limited to the payment of compensation benefits for accidental injury. Our statute does not contain the "accidental" limitation. The benefits accrue from a personal injury arising out of and in the course of the workman's employment. The terms "injury" and "personal injury" are defined in the act as not to "include a disease unless it shall result from the injury." Section 85.61, paragraph 5c, Code, 1946. But we held in Hanson v. Dickinson, 188 Iowa 728, 733, 176 N. W. 823, 825, that our term "personal injury" was much broader than the term "personal injury by accident" found in most other acts. There too we said:

"The manifest design of the general assembly, in providing that the term 'personal injuries' should not include a disease, was to eliminate occupational diseases: that is, those which are incidental to or result from the occupation in which the employee is engaged."

We have held that an injury may be a disease, which is not occupational; that it may be an aggravation of injuries which in their origin were apart from the employment; that in order to prove that the employee received a personal injury in his work it is not necessary that there be proof of some special incident or unusual occurrence. See Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N. W. 35, 94 A. L. R. 573, where many prior decisions are discussed, and also Littell v. Lagomarcino Grupe Co., 235 Iowa 523, 17 N. W. 2d 120.

Since no one contends the tularemia was an occupational disease the only inquiry is whether the deceased received it in his work—whether the injury (in this case the disease of tularemia of which he died) arose out of and in the course of his employment. And here conclusions of fact can be drawn without proof of certainty. The law contents itself with probabilities. If the commissioner hearing sufficient evidence that the disease was probably causally connected with the employment makes a finding of fact to that effect such finding is binding on the reviewing courts. Here the doctors were quite emphatic in their opinions that Mr. Ford contracted tularemia by the entry of the germ into the cut on his finger while he worked for the employer skinning animals which are infected with such germs. Of course there was some evidence that Mr. Ford had hunting dogs and that he had gone hunting in the Fall of 1947 but this only presented an area of debate as to the probabilities.

In Boswell v. Kearns Garden Chapel Funeral Home, 227 Iowa 344, 351, 288 N. W. 402, 405, we held the employee could not recover upon proof that house-cleaning work could "possibly" have aggravated the ringworm infection on the employee's hands. But we said: "* * * the doctors might have said, from all the circumstances disclosed, that it was very probable the claimant picked up this germ in the house-cleaning operation and had they done so we would have no trouble * * *."

The medical testimony as to the probable origin of the disease, which was lacking in the Boswell case, is supplied with abundance here.

In Littell v. Lagomarcino Grupe Co., supra, we held medical testimony that the work performed by the employee and the exertion it entailed "very likely" resulted in aggravation and acceleration of his pre-existing defective heart condition was sufficient to support the commissioner's award.

II. Claimants cite Black v. Creston Auto Co., 225 Iowa 671, 281 N. W. 189 (injury traceable to inhalation of noxious fumes from a blow torch used by an employee); Dille v. Plainview Coal Co., 217 Iowa 827, 250 N. W. 607 (injury to the heart induced by inhalation of carbon monoxide fumes); Nellis v. Quealy, 237 Iowa 507, 21 N. W. 2d 584 (injury to the eye

when material flew into the eye while employee was scraping employer's truck) ; Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N. W. 35, 94 A. L. R. 573. (lifting that caused perforation of the stomach wall at the place of an old ulcer) ; and Littell v. Lagomarcino Grupe Co., supra. The employer seeks to distinguish such cases on the ground that in none of them was there a "germ produced" disease involved.

Such a distinction could not be made as to the Boswell case where the disease was blood poisoning, and we said, in effect, that if the doctors had testified the claimant very probably picked up the germ in his employment an award would have been sustained. But we see no distinction between a germ produced disease as a personal injury and a disease aggravated or produced by reason of a traumatic hurt, exertion, or the inhalation of fumes. Proof that an employee probably picked up a germ in the course of his employment might be difficult to obtain as to many diseases, while a disease that is aggravated or produced by straining, exertion, or the breathing of noxious fumes is more susceptible to proof as to employment connection. But in either case when the proof is sufficient the award should follow. The employer cites no authority in support of such a distinction and we know of no sound reason why the award should be given to the employee who strains his heart in the exertion of his work and be denied to the employee who picks up a deadly germ while handling his employer's germ laden furs. The question is one of proof—of tracing the injury to its origin, to see if it lies in the performance of the employee's work. We repeat that once we say disease other than occupational is included in the term "personal injury" then it follows as a matter of course the award like awards for injury occasioned by physical impact depends upon the evidence showing it had its occasion in the performance of the employee's duties.

The following quotation from Justice Cardozo's opinion in In re Claim of Connelly v. Hunt Furniture Co., 240 N. Y. 83, 85, 147 N. E. 366, 367, 39 A. L. R. 867, 869, is fairly illustrative of the attitude of the courts in disease cases in those jurisdictions where the proof must go further than establish a personal injury (all that is necessary under the Iowa law, Hanson v. Dickinson, supra) and establish an accidental injury :

"Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time * * *. For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or a cut. If these become dangerous or deadly by contact with infected matter, we think and speak of what has happened as something catastrophic or extraordinary, a mishap or an accident."

According to the doctors the trifling cut on Mr. Ford's finger was the channel of entry of the tularemia germ. It is immaterial whether the cut was sustained in the course of or apart from the employment. Its presence adds to the probability that the disease was incurred in the course of employment because the doctors said the usual mode of contracting the disease is the handling of skins of fur-bearing animals and that it was more likely to develop if the handler had an open break in the skin of his hands. We are convinced the record amply sustains the commissioner's finding that the disease arose out of and in the course of employment.

III. The point is made that the application for arbitration alleged that Mr. Ford cut his finger while skinning animals, resulting in his contracting tularemia from which he died and because of such allegations claimant is confined to a recovery based upon proof that Mr. Ford cut his finger in the course of his employment. We held in Cross v. Hermanson Bros., 235 Iowa 739, 742, 16 N. W. 2d 616, 618, that the application is not a "formal pleading" and that strict "conformity of proof to allegation" is not necessary.

The decision of the trial court is affirmed.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.