LEO TAUB, Plaintiff, *v.* (AMERICAN) LUMBERMENS MUTUAL CASUALTY COMPANY OF ILLINOIS, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, June 1, 1950.

*Robert Markewich* for plaintiff.

*William C. Morris, Robert O. Ewell* and *Charles Bakos* for defendant.

GENUNG, J. Plaintiff, Leo Taub (also and otherwise known as Isidore Tobias), seeks to recover the sum of $656.45 for the alleged breach by defendant of the terms and provisions of an insurance contract known as "Personal Hospital Expense Policy" to which is attached "Surgical Benefits Schedule Rider", issued for policy year April 9, 1948, to April 9, 1949.

The policy in question, among other declarations and provisions, specified:

"This Policy provides benefits for Hospital Expense, not covered under any Workmen's Compensation or Occupational Disease Act or Law, caused by Accidental Bodily Injuries, and by Sickness or Disease, as herein limited and provided.

(AMERICAN) LUMBERMENS MUTUAL CASUALTY COMPANY
OF ILLINOIS

"In consideration of the statements in the application for this policy, a copy of which forms a part hereof, and of the payment of the premium herein specified,

"Hereby insures the person in Statement 1 of the Copy of Application, against loss resulting from the expense of hospital confinement caused by accidental bodily injuries sustained during the term of this Policy, hereinafter referred to as such injury, or by sickness or disease contracted and commencing after this Policy has been in force for not less than fifteen days, hereinafter referred to as such sickness; subject to the provisions, conditions and limitations contained in this Policy."

Defendant, in addition to the general denials of the material allegations of the verified complaint, as an affirmative defense, pleaded that the very condition or illness for which plaintiff underwent surgical treatment on October 22, 1948, actually existed and was known by plaintiff to exist as far back as March 21, 1947, from which time to April 21, 1947, plaintiff was confined to the Presbyterian Hospital in the city of New York where he was operated upon for carcinoma of the left kidney and basal cell epithelioma of the left cheek. During this confinement a transurethral resection was performed because the plaintiff, upon admission, gave a history of urinary frequency, with burning, and nocturia. The existence of benign prostatic hypertrophy was then diagnosed.

The hospital records for the March 21, 1947, " P H GU " admission shows diagnosis of " clear cell carcinoma of left kidney, basal cell epithelioma of left cheek and benign prostatic hyperthropy ". For the October 19, 1948, " P H GU " admission the diagnosis, shown is " benign prostatic hypertrophy " and the operation therefor as " suprapubic prostatectomy ".

Testimony and records produced upon the trial evidence that the plaintiff was, for the second time, confined to Presbyterian Hospital from October 19, 1948, to November 4, 1948. This was the second urological admission and the plaintiff complained of frequency of urination, dribbling and nocturia. The diagnosis was benign prostatic hypertrophy and the prostate was found to be " * * * enlarged, firm, non-tender, movable, with one firm nodule on the right lobe." An operation was prescribed and carried out for fibroadenoma of the prostate gland — an enucleation was performed.

While the plaintiff produced one Dr. Leopold Rothschild upon the trial to testify regarding the existence of prostatic

condition in males of the age of sixty years, plaintiff now being fifty-eight years, this doctor admitted that "dribbling" is a symptom of prostatic hypertrophy and that the plaintiff had complained to him as early as February, 1947. Plaintiff did not produce the operating and treating surgeon, Dr. George F. Cahill, who examined and performed the operations on each of the confinements to Presbyterian Hospital.

Defendant introduced into evidence the entire hospital record covering the two periods of hospitalization and the plaintiff stipulated that they may be introduced without the production of any person to testify as to the authenticity of the documents and the entries therein made.

Plaintiff asserts that while he may have complained of a similar ailment at two different times the condition found to exist on October 22, 1948, was not the condition which existed on March 21, 1947, and, therefore, it was not a sickness or ailment which was contracted and commencing less than fifteen days after the policy had been in force.

Defendant asserts, that the very condition upon which the claim and suit is based was actually diagnosed and did exist for more than one year before the effective date of the policy. This defense is sustained by the evidence in the hospital records.

The plaintiff did not merely have a predisposition to the ailment or sickness for which he seeks to recover. The condition was discovered before the inception of the policy and was not remedied until the policy had been in force for over six months.

It has been held that where there has been prior treatment for a thyroid condition the plaintiff was not entitled to recover. (*Kuritzky* v. *National Cas. Co.*, 261 App. Div. 1083, revg. 23 N. Y. S. 2d 776.)

Coverage cannot be held to be applicable to conditions which exist at the time of application for insurance. (*Webster* v. *Columbian Nat. Life Ins. Co.*, 131 App. Div. 837, 404; *Apter* v. *Home Life Ins. Co. of N. Y.*, 266 N. Y. 333.)

Symptoms of plaintiff's sickness or ailment were apparent in March, 1947, and similar symptoms were present in October, 1948. It cannot be said that the condition did not exist prior to the inception of the policy when the very condition was not surgically corrected until October, 1948. See *Reiser* v. *Metropolitan Life Ins. Co.* (262 App. Div. 171) where it was held that a condition does not exist until it reveals itself. The instant case is not one in which a mere predisposition to an ailment is involved and for which indeterminateness recovery is not barred.

(*Hilts* v. *United States Cas. Co.*, 176 Mo. App. 635.)  Cf. *American Cas. & Life Co.* v. *Gueringer* (205 S. W. 2d 423 [Tex.]) where the insured had undergone surgery for the removal of a cancerous breast in April, 1943, whereafter she had fully recovered and no further evidence of cancer was found but in December, 1945, died as result of cancer.

After careful consideration of all the evidence it is found that the plaintiff has failed to prove that the defendant breached its contract to pay hospital and surgical expenses.  The defendant, by a fair preponderance of the credible evidence, has proven its defense that the sickness or ailment was not contracted and commencing after the policy had been in force for not less than fifteen days.

Judgment upon the merits of the action is rendered in favor of the defendant dismissing the complaint upon the law and the facts.