AMBROSE T. JACQUES, appellant, v. FARMERS LUMBER & SUPPLY
COMPANY, employer, EMPLOYERS LIABILITY ASSURANCE
CORPORATION, insurance carrier, appellees.

No. 47838.

(Reported in 47 N.W.2d 236)

APRIL 4, 1951.

Whicher & Davis and A. M. Seff, all of Sioux City, for appellant.

Sifford & Wadden, of Sioux City, for appellees.

MULRONEY, J.—The record in this workmen's compensation case presents no fact dispute. All of the evidence was either introduced by plaintiff or was the subject of stipulation between the parties. The appeal really presents a single question of law but a proper consideration of the law question makes some statement of the facts necessary.

Ambrose T. Jacques, age fifty-eight, was an employee of the Farmers Lumber & Supply Company of Sioux City, Iowa. His work was spray painting truck bodies eight hours a day for a period of about two years. He worked mostly with red paint and part of the time he wore a mask. The employer did not furnish fresh filters for this mask and when it became clogged he was forced to paint without a mask. He inhaled much paint into his lungs and would "spit red" all of the way home and get up "gagging" the next morning. After he had worked about a year he started to become fatigued and it was hard for him to breathe and he lost his appetite. He began to lose weight. Mr. Jacques is five feet two and his normal weight was one hundred thirty-five or one hundred fifty pounds but during the last days of his employment with defendant he was down to one hundred eighteen pounds. His condition grew worse until he could no longer stand the work and on May 30, 1947 he quit. In July of 1947 he went to work for Armour's, but they laid him off after two weeks. Later he went to his doctor and on August 12 his doctor notified him (by a letter which is in evidence) that he had an "active case of pulmonary tuberculosis" and that his "occupation as a spray painter definitely aggravated [his] lung condition." The following is the entire record of

medical testimony given in the case, without objection, by Dr. David R. Brown:

"I attended Ambrose Jacques at Elk Point on or about July 24, 1947, and had X-rays taken of him at St. Vincent's Hospital July 29th and August 4th.

"I took the history of his case at that time and in my opinion he had a latent condition of incipient tuberculosis when he started work for the Farmers Lumber & Supply Company about two years prior to that time.

"It is my opinion, based on history given, that if the work which he did for the Farmers Lumber & Supply Company was spraying paint without proper protection and without the proper mask ordinarily used for such purposes, then the conditions under which he was working aggravated the lung condition of tuberculosis which became increasingly worse by reason of such working conditions, so that by the time I had him X-rayed on July 29 and August 4, 1947, the disease had become very active and attained an advanced stage.

"I also found from the history of the case that the patient did not know that he had tuberculosis although he had not been feeling well, and came to see me because he was concerned about the way he was feeling, and I am sure that he had no idea that he had pulmonary tuberculosis until I gave him a report of what I had found by use of the X-rays and other examination, which report was made to him on August 12, 1947.

"I also am sure that this disease had progressed to such an advanced stage by the time I examined him on July 29th and August 4th that even though he discontinued working under conditions such as were described in his history prevailed at the Farmers Lumber & Supply Company, the disease would still continue to become progressively worse unless active treatment were instituted and the disease checked.

"After discovering the condition and at the time the report was made as of August 12, 1947, I advised the patient that it would be harmful to him to continue to work and that he should immediately go to a sanitarium and undertake treatment for this condition and that I believed that until this condition was cured he would be disabled to follow any gainful occupation."

It was stipulated in the case that "the first notice obtained by the employer and insurance carrier as to the physical condition of claimant was obtained on October 8, 1947"—the date when the petition for arbitration was filed. In the answer it was pleaded that "no knowledge was obtained or notice given to the employer within 90 days after the alleged occurrence of the claimed injury."

The ruling of the deputy industrial commissioner was a "dismissal" of the employee's petition, on the ground he failed to give notice to his employer within ninety days of the occurrence of the injury, as prescribed by section 85.23, Code, 1950. This ruling was upheld by the industrial commissioner and the Woodbury County District Court.

I. Section 85.23, Code, 1950, provides for the time within which notice must be given to the employer of the "occurrence of the injury"—unless the employer obtains knowledge of the occurrence of the injury. The closing provision is: "but unless knowledge is obtained or notice given within ninety days after the occurrence of the injury, no compensation shall be allowed." The claimant argued below and contends here that the ninety days does not start to run until August 14, 1947, when he first learned from the medical examination that he had tuberculosis. Defendants assert the ninety-day period could not start to run later than May 30, 1947, the day when the employee quit.

We have often said the workmen's compensation law should be liberally construed in aid of accomplishing the object and purpose of the legislation. Pierce v. Bekins Van & Storage Co., 185 Iowa 1346, 172 N.W. 191; Secrest v. Galloway Co., 239 Iowa 168, 30 N.W.2d 793. It is "primarily for the benefit of such worker and his dependents." Disbrow v. Deering Implement Co., 233 Iowa 380, 392, 9 N.W.2d 378, 384.

Most workmen's compensation statutes have some provision for notice to the employer of the occurrence of an injury. We said in Knipe v. Skelgas Co., 229 Iowa 740, 748, 294 N.W. 880, 884, that "the only purpose of the statute [section 85.23, Code, 1950] is to enable the employer to investigate the facts relating to the injury." While there is seemingly little uniformity in the notice provisions in the workmen's compensation statutes of the various states, courts, generally, have been liberal in their

552

constructions of such statutes. Annotations 78 A. L. R. 1232 and 92 A. L. R. 505. The writer of the first above annotation draws this general rule from the authorities:

"Workmen's compensation acts are considered as of a remedial character, the provisions of which should be construed broadly and liberally in order to effectuate their purpose, and this rule of liberal construction will be taken as a guide in construing the provision requiring notice of the injury to be given to the employer by or on behalf of the injured employee."

■ The question here is as to the meaning of "within ninety days after the occurrence of the injury." What did the legislature mean by the phrase "occurrence of the injury"? In its definition statute, section 85.61(5c), the act does not define the term "injury", but it does say the term "shall not include a disease unless it shall result from the injury." But this court has long said the term "injury" in our act shall include disease other than occupational disease. See Almquist v. Shenandoah Nurseries, 218 Iowa 724, 254 N.W. 35, 94 A. L. R. 573; Ford v. Goode, 240 Iowa 1219, 38 N.W.2d 158. Also it includes the "lighting-up" of a pre-existing disease (Hanson v. Dickinson, 188 Iowa 728, 176 N.W. 823); and the injury need not arise out of an accident or any special incident (Ford v. Goode, supra, and cases there cited).

■ So when we construe the phrase "occurrence of the injury" as the starting point for the ninety-day period in the notice statute we have one word "injury" which has been consistently, for a period of twenty-five years or more, construed to include disease or the lighting-up of a pre-existing disease when no occasion of time or place can be pointed to when and where the employee received the injury. So far as disease coverage is concerned we have held our statute is broader than other Workmen's Compensation Acts which limit coverage to "personal injury by accident." Ford v. Goode, supra.

Since the legislature made disease compensable under its term "injury" then clearly it must have meant the "occurrence" of this type of "injury" was when the employee found out about the disease. To hold otherwise would defeat the obvious legislative purpose. The employee could hardly be held under a

duty to notify his employer of a disease of which he had no knowledge. It would be unreasonable to conclude that the legislature intended a construction of "occurrence of the injury"—and we substitute "occurrence of the disease"—to mean a point of origin before the employee found out about his disease.

In Clary v. Proudfit Co., 124 Neb. 582, 587, 247 N.W. 417, 419, the Nebraska Supreme Court stated the rule as follows:

"Within the meaning of the law barring claims for compensation of a workman, if not made within six months, a latent accidental injury, seeming at first to be trifling and noncompensatory, but subsequently resulting in a progressive disease and a disability, occurs when its true nature is discovered by him or when the diseased condition culminates in disability." (Citing cases.)

In Wheaton's Case, 310 Mass. 504, 506, 38 N.E.2d 617, 619, the employee was required under the Massachusetts workmen's compensation law to give the employer notice "as soon as practicable" after the occurrence of the injury. The opinion holds this placed a duty on the employee "to furnish such notice within a reasonable time after he has knowledge of the particulars that the notice should contain." The opinion goes on to say:

"He could not be expected to give a notice of the cause of the injury, the nature of which might be entirely due to disease, until, acting reasonably in search of the cause of his disability, he learns that he has sustained an injury that probably arose out of and in the course of his employment."

In Wallich v. Sandlovich, 111 Neb. 318, 196 N.W. 317, the workman received what was first thought to be a trivial injury to his back. His health and strength failed gradually but he did not know the cause until an X-ray examination nine months later disclosed a fractured vertebra. The statute provided for the filing of claims within six months from the date of the alleged injury. The court held the injury could be found to occur when the fractured vertebra was discovered by the X-ray examination. See also to the same effect, Hines v. Norwalk Lock Co., 100 Conn. 533, 124 A. 17.

Much authority for the construction that a disease *occurs* when it is discovered can be found in the many decisions construing the language of insurance policies covering bodily injuries or disease "occurring and originating". after the issuance of the policy. Illustrative of the holding of the courts in these insurance cases is Cohen v. North American Life & Cas. Co., 150 Minn. 507, 508, 185 N.W. 939, where the court stated: "As we construe it the defendant [insurer] is liable, though the medical cause of the disease existed prior to the policy, if the disease or sickness does not manifest itself until afterwards."

A like case is Reiser v. Metropolitan Life Ins. Co., 262 App. Div. 171, 172, 173, 28 N. Y. S.2d 283, 285, 286, where the policy covered " 'bodily injury or disease occurring and originating after the issuance of said policy.' " In holding the insurance company liable the Supreme Court of New York Appellate Division construed the above clause and stated:

"A disease does not occur or originate within the meaning of the policy until it becomes a disease in the general acceptation of that term; a bodily injury does not occur or originate within such meaning, at least until it reveals itself. So the courts in other jurisdictions have decided. Cohen v. North American Life & Casualty Co., 150 Minn. 507, 185 N.W. 939; Metropolitan Life Ins. Co. v. Reynolds, 48 Ariz. 205, 60 P.2d 1070; Provident Life & Accident Ins. Co. v. Jemison, 153 Miss. 53, 120 So. 180; Hilts v. United States Casualty Co., 176 Mo. App. 635, 159 S.W. 771; Dance v. Southern Surety Co. of New York, 16 La. App. 373, 134 So. 725; Home Life Ins. Co. v. Allison, 179 Ark. 65, 14 S.W.2d 229."

As stated, it would defeat the very purpose of the workmen's compensation law to first hold a disease an injury and therefore compensable and then hold the occurrence of the injury could be before the workman discovered the disease. Whether or not a person is suffering from a disease, or any particular disease, or the lighting-up of some latent disease, is generally a question to be determined by physicians. The condition must be said to occur, within a statute placing a burden of notice of occurrence on the employee, when the physician's diagnosis discloses to the employee the nature of his disability.

We have heretofore in Otis v. Parrott, 233 Iowa 1039, 8 N.W.2d 708, expressed our disapproval of the opinion in Mueller v. United States Gypsum Co., 203 Iowa 1229, 212 N.W. 577. The latter case is cited by the employer here. Anything in the opinion in the Mueller case contrary to the views herein expressed is overruled.

The judgment appealed from is reversed and the cause is remanded to the district court with instructions to remand the case to the industrial commissioner for the proper award on the record.—Reversed and remanded.

All JUSTICES concur except MANTZ, J., not sitting.