DALE LITTELL, Appellee, v. LAGOMARCINO GRUPE COMPANY, Appellant.

No. 46567.

JANUARY 9, 1945.

Jordan & Jordan, of Cedar Rapids, for appellant.

Fisher & Fisher and John D. Randall, all of Cedar Rapids, for appellee.

SMITH, J.—Kenneth Littell, eighteen years old, worked for the employer-appellant during July and early August 1941. He died October 30, 1941, of acute myocarditis, which the doctor defines as inflammation of the heart muscles.

His father, claimant-appellee, has instituted this proceeding for compensation, claiming death was due to "a personal injury arising out of and in the course of his employment * * * on the 4th day of August, 1941." It was alleged that deceased employee, while unloading a case of canned goods, slipped and fell, suffering a severe strain of the heart, which caused his death.

By an amendment filed at the close of the evidence claimant alleged that decedent "suffered a personal injury * * * during the latter part of July, or the early part of August, 1941, resulting in temporary and permanent disability; or, temporary and total disability; and death."

We have recently pointed out that in proceedings of this character the application is not to be judged by technical rules of pleading, nor is the same conformity of proof to allegation necessary as in ordinary actions. Cross v. Hermanson Bros., 235 Iowa 739, 16 N. W. 2d 616.

On this appeal we are asked to determine whether there was competent and sufficient evidence: (1) of an injury arising out of and in the course of employment; (2) that such injury caused or hastened death; (3) that the employer had notice or knowledge under section 1383, Code, 1939; and (4) that claimant was a dependent parent under section 1402 of said Code. If there was, the commissioner's findings and decision are, of course, final. Sections 1402, 1453, Code, 1939.

I. The only evidence of any accidental injury or of injury growing out of or attended by any special incident or unusual occurrence is found in the testimony of several witnesses as to certain statements or declarations of decedent. Its admissibility is earnestly challenged by appropriate objections. No eyewitness testified to any of the accidents or occurrences referred to. The declarations of decedent are claimed by appellee to be admissible as part of the res gestae. A brief résumé is in order.

It appears that on several occasions the employee quit work

in the afternoon and after arriving home (at his sister's) told witnesses of some accidental injuries. Once he said he fell while carrying a sack of sugar upstairs; on another occasion, that he slipped, in the back end of a wet truck, with a couple of cases of peas, or, as another witness testified, "while * * * picking up some canned goods." At another time he said he "caught a bunch of bananas and hurt his side."

On none of these occasions did it appear clearly when the accident referred to by decedent had occurred or how long before the making of the statement. At one of these times, one witness said, he appeared to be suffering pain and breathed "very fast like it was hard for him to get any air at all." He thought he had a rupture. He complained that "it hurt him on the left side in the front of his body." He remained home that time, still suffering pain, until the second morning after.

The time he told of being hurt catching the bunch of bananas his sister does not give any details as to apparent suffering but she thinks after that "he worked until the end of the week and never worked again." One of the other witnesses said "he complained of his stomach muscles hurting right under his chest, and that was the reason why he was in bed and lying down."

These occurrences were during the latter part of July and the early part of August. One witness said two of them were about a week apart, one after July 25th, the other before August 1st. The sister said one was the latter part of July and another about a week later. The third witness mentioned the first week of August.

We have attempted to set out only enough to indicate the character of the testimony. For reasons that will appear later we do not deem it necessary to go into greater detail or to pass upon the admissibility of these declarations of decedent.

II. There is, however, competent evidence of injury apart from the special incidents or accidents referred to in these statements of decedent. One witness testified that Kenneth drove the employer's city truck, loaded and unloaded it, handled sugar and canned goods and all kinds of vegetables. The canned goods weighed forty-eight to fifty pounds per case; the sugar, one hundred pounds. He hauled and handled any kind of mer-

chandise the employer sold, delivering the groceries to stores in the city.

His sister, already mentioned, testified that when he was about ten years old he had swellings in the joints of the knees or elbows that continued for about a week. His stepmother, who raised him, said he had pain in his knees and elbows "on and off since he was ten." His athletic director in high school, who had taught physical education fifteen years, made endurance tests of his pupils in 1939, 1940, and 1941, while Kenneth was in high school. He reported Kenneth as underweight and slightly under standard as to endurance in 1939 and 1940. In 1941 he did not think it advisable for Kenneth to take the test because "he did not appear to be in the best of health as the result of my observations during the basketball season."

Kenneth's employment commenced immediately upon his graduation from high school in 1941. There is no evidence that he was examined physically, preparatory to entering appellant's employment.

Dr. Hecker, the physician and surgeon of appellant-employer, saw the employee August 6, 8, and 13, 1941. As a witness for claimant-appellee he testified the boy told him on the 6th that "he was helping unload bananas and * * * hurt his left side." This and other history elicited from him by the doctor were received by the deputy commissioner "for the purpose of evaluating the diagnosis and opinions which may hereafter be expressed by the witness."

The doctor said he was "tender in his left side * * * yet I was unable to find anything definite other than some tenderness in the area examined." On August 8th "he felt a little sore more towards the front, rather than to the flank as he had before." On the 13th, the doctor said, he claimed to be weak and short of wind and to have some tenderness across the abdominal muscles. He told the doctor he usually weighed one hundred fifty-four but he was down to one hundred forty pounds. (His height was five feet, 10 inches.) He had been coughing for a week but had no night sweats. "He kept saying he felt his work was heavy; so I examined him again." Finally the doctor, feeling there was some cause for the weakness and shortness of breath, checked his heart and found it to be en-

larged, his pulse rate around one hundred and eight, ''and he also had an occasional skip beat or extra systole.''

After finally quitting work in early August (the exact date not being shown in the record) Kenneth left Cedar Rapids and lived with his father near Davenport. Dr. White saw him there suffering with acute decompensation of the heart: ''The heart was striving to meet the body requirements of the blood flow.'' There was an enormous enlargement of the heart. His whole chest would heave with each beat. ''I doubted whether he would live out the night.''

Dr. White saw him numerous times thereafter. By September 27th he had improved markedly. The rapid or difficult breathing was gone. His pulse was eighty-four. On October 24th his pulse was up to ninety, indicating ''that the heart had begun to struggle again.'' He told the doctor of a recent cold ''which,'' the doctor said, ''helped to account for this exacerbation in his cardiac symptoms.'' On October 25th he was ''on the verge of decompensation'' and on the 30th he died.

Dr. White, on cross-examination, gave his opinion of the cause of his condition on October 24th to date of death:

''Well, I could only speculate on that from what I was told. He may have had a little flare-up with a cold; he may have been a little too active * * * over-burdening a crippled heart.''

The testimony of Dr. Hamilton is based on hypothetical questions. He did not examine the patient. He said the greatest cause of heart trouble in younger people is rheumatic fever, which is usually accompanied by swelling and pain in the joints. He expressed the definite opinion that the myocarditis that caused death ''very probably'' resulted from the hypertrophied heart found by Dr. Hecker. On cross-examination he explained that by ''very probably'' he meant that he did not ''know for sure. * * * it might and it might not.''

Dr. Korns testified unequivocally that from the heart condition found by Dr. Hecker on August 13th it was likely the patient had a pre-existing weakness of the heart for at least a month, ''the chances are that would have been present for years. Yes, that is the probability.''

This witness was first questioned as to his opinion based upon a hypothetical question that included the various accidents referred to in decedent's statements heretofore referred to, that is, the fall with the canned goods, the fall with the sugar, and the catching of the bananas. He said these would have been quite likely "to cause the symptoms of heart failure found by the Company doctor on August 13th, 1941." However, Dr. Hecker said he could not see "that the catching of the bananas had anything to do with his heart ailment."

Later questions described the events after the employee quit work, his condition on September 7th, 27th, and other dates to and including the day of his death, October 30th. The witness testified that the symptoms found on August 13th were progressive, "I would say it sounds very much like it"; also "it is entirely possible" that "the cause of the death was the heart condition that was indicated by the examination of August 13th, 1941, and as further indicated by the examination of September 7th, 1941, and as further indicated by the X-ray, Claimant's Exhibit No. 6, on October 24, 1941."

Apparently not wishing to make a finding upon a basis that included the questionable testimony of decedent's declarations concerning the special incidents or accidents, the commissioner questioned the witness as follows:

"Q. Assuming all the factors to be approximately correct, related to you in Claimant's hypothetical question; but eliminating the three incidents of unusual strain—forgetting those; taking into consideration in addition to the factors stated in the question, that this boy graduated from High School in Cedar Rapids June 7, 1941, and then went to work driving a truck and handling more or less heavy merchandise, beginning to work regularly about July 5th; suffered a condition as revealed by the examination referred to as having occurred on August 13th, 1941 * * * In other words, he worked for a period of from four to six weeks handling merchandise, including heavy merchandise * * * weights up to a hundred pounds;—What is your opinion, Doctor, based upon that assumption of those facts, as to whether or not this labor he was performing probably materially aggravated or accelerated the pre-existing condition of the heart? A. Very

likely. You are implying, as I understand it, that he went from school where he was doing comparatively little work, to a job?"

The commissioner found that when the employee commenced work for appellant he already had a defective heart and that the work performed by him and the exertion it entailed resulted in aggravation and acceleration of his pre-existing defective heart condition, resulting in death.

It is clear this finding is based upon the record *leaving out of account the controversial evidence of the three occasions of claimed unusual strain.* The commissioner expressly relied upon our decision in Almquist v. Shenandoah Nurseries, 218 Iowa 724, 736, 254 N. W. 35, 41, 94 A. L. R. 573.

In that case we held that a personal injury may be compensable under our statute even though it does not arise out of an "accident" or "special incident" or "unusual occurrence":

"A special incident or unusual occurrence is not material except to prove the personal injury. So, if the personal injury is proven by other evidence, then the special incident * * * becomes immaterial. Possibly there are many cases under different records where the employee may not have proved that he received a personal injury in his work without showing some special incident, but even in those instances the necessity of showing the special incident would be to prove personal injury and not to lay the foundation otherwise for compensation."

Of course, changes in the human body due to the general processes of nature are not compensable. In Madden's Case, 222 Mass. 487, 495, 111 N. E. 379, 383, L. R. A. 1916D, 1000, cited by us in the Almquist case it is said:

"A disease, which under any rational work is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made."

This Madden case involved an employee who, when she commenced work, had "a weak heart condition" that became aggra-

vated by the exertion of her employment. It is in that respect peculiarly in point here.

The basis of the commissioner's decision is clear and we find there was sufficient competent evidence to support it. It is not necessary to review the record at greater length or to discuss further the opinion in the Almquist case, which marshals the authorities and logically supports the proposition that no proof of accident or special or unusual occurrence is necessary where the injury is otherwise proven. See, also, Dille v. Plainview Coal Co., 217 Iowa 827, 843 et seq., 250 N. W. 607; Black v. Creston Auto Co., 225 Iowa 671, 676 et seq., 281 N. W. 189; West v. Phillips, 227 Iowa 612, 288 N. W. 625.

III. It is urged by appellant that claimant has not sustained the burden of proving notice to or knowledge of the employer under section 1385, Code, 1939.

It is difficult to see how it can be argued here that the employer was without such knowledge of the employee's injury. One witness testified to the fact that the foreman on one occasion granted him the afternoon off. The physical condition of the employee when he reached home on that occasion is shown to have been such as to indicate pain and difficult breathing. He took time off a week later and was examined by Dr. Hecker, who testified:

"I am at the present time the physician and surgeon employed by the Lagomarcino-Grupe Company * * * and have been for two years * * *."

This doctor saw the employee on three occasions. On the third he for the first time checked the employee's heart and discovered its serious condition. He was advised that the employee felt his work was heavy.

That the doctor was acting for his company seems clear from his own testimony:

"I gave the boy a brief examination and felt there was something wrong with the heart, and my instructions to him at that time I felt the boy needed medical attention and I felt there was no sense in duplicating examinations, and if he wanted me to take care of him I would give him a more thorough examina-

tion; but if he didn't he could go where he wanted; but it should have some attention."

This fairly implies he was not acting as the boy's doctor but on behalf of his company. There is other evidence tending to confirm that Ivan Elam, appellant's foreman, must have had some knowledge. It appears in the cross-examination of Mrs. Elam:

"Q. And had he been overheated? A. Well, that is what Ivan seemed to think was the matter with him, that is why he came home. When he came home the second time we went to Dr. Hecker."

The stepmother also testified that Ivan "sent him to the doctor."

We are of the opinion this assignment of error is without merit. See Vandalia Coal Co. v. Holtz, 68 Ind. App. 670, 120 N. E. 386; Arneson v. Robinson, 59 Idaho 223, 82 P. 2d 249; Federal Underwriters Exchange v. Ener, Tex. Civ. App., 126 S. W. 2d 769, 774.

IV. Lastly, appellant argues that claimant was not a dependent parent. There is no evidence that the son was emancipated unless the fact that he paid his own board and room constituted such proof. Section 1402(3), Code of Iowa, 1939, provides that the parent of a minor who is receiving the earnings of his child is conclusively presumed to be dependent.

The commissioner has found that under the record here the son paid his board and lodging out of his earnings and thereby relieved claimant of that expense. Just prior to his employment, while he was at school, claimant paid his room and board at Mrs. Elam's. During employment claimant bought him shirts and socks "or something like that * * * if there was anything we thought he needed that he didn't get himself." There had been talk about further schooling.

After he became unable to work he lived with his father's family until his death. It is apparent that there was no emancipation. Claimant continued to plan for his son's welfare. There is no suggestion that the son was free from parental control.

We are of opinion the facts here fall within the doctrine announced by Brandhorst v. Galloway Co., 231 Iowa 436, 1 N. W. 2d 651. See section 1402(3), Code, 1939. The finding of the commissioner is not without support and we are not at liberty to interfere.

Upon the considerations we have pointed out—at greater length perhaps than necessary—the decision of the district court affirming the award of the commissioner is affirmed.—Affirmed.

All JUSTICES concur.