Leo SONDAG, Appellant,

v.

**FERRIS HARDWARE, Employer and Grain
Dealers Mutual Insurance Company,
Insurance Carrier, Appellees.**

No. 2–56687.

Supreme Court of Iowa.

Aug. 28, 1974.

Michael R. Mundt, Denison, for appellant.

Jones, Hoffmann & Davison, Des Moines, for appellees.

Submitted to MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

Claimant Leo Sondag appeals trial court's judgment affirming a decision of the industrial commissioner denying him workmen's compensation benefits from his employer, Ferris Hardware. We affirm in part, reverse in part, and remand to the industrial commissioner with directions.

Claimant, age 57, was employed for 14 years as a combination clerk and appliance serviceman for Ferris Hardware and its predecessors. Commencing in 1968 he had experienced chest pains, particularly on the heavy exertion frequently required by his employment. By 1970 his difficulty had been diagnosed as angina pectoris and nitroglycerin was prescribed.

On August 20, 1971, a hot and sultry day, claimant was recalled from vacation to hurriedly unload crated washing machines weighing 300 to 400 pounds from a boxcar and haul them to his employer's store. He started having chest pains. While the machines were being transported the pain eased for a period of about five minutes. However, claimant continued his strenuous physical activity for approximately one hour following the onset of his pain. He finally told his employer he could not continue working, and was taken to a hospital.

The final diagnosis following claimant's admission to the hospital was myocardial infarction, a localized death of a heart muscle resulting from obstruction of circulation by blood clot or abnormal particle. Subsequent secondary complications, hospitalization and treatment were associated with the same condition. Dr. Donald J. Soll, claimant's family physician, testified claimant was disabled from doing anything other than sedentary work and his condition was permanent.

In a report to defendant insurance company Dr. Soll stated:

"I feel this episode would have occurred regardless of the type of work as I feel he has a moderate amount of atherosclerosis."

In a later deposition Dr. Soll testified he had no reason to change his report to the insurance company. He also testified the heart attack "would have happened, I think it would have no matter what he was doing."

Dr. Louis Banitt, an Iowa licensed and Mayo Clinic trained specialist in internal medicine, in response to a hypothetical question asking for his opinion, testified, "although this myocardial infarction may have occurred on this date regardless of the amount of physical activity * * * his continuing to work after symptoms of

the myocardial infarction would have aggravated the condition."

The industrial commissioner found claimant did not sustain a personal injury arising out of and in the course of his employment and denied recovery. On appeal, the district court found conflicting evidence generated a fact question whether the injury did in fact arise out of and in the course of claimant's employment and whether there was aggravation of a pre-existing condition. The court concluded because a fact question existed it was bound by the industrial commissioner's finding.

Appealing here, claimant asserts 1) there was no substantial evidence to support the commissioner's conclusion that claimant's injuries did not arise out of and in the course of his employment, and 2) claimant established as a matter of law his injury did so arise. See § 86.30, The Code.

I. Our scope of review is to ascertain whether there is sufficient competent evidence in the record to warrant the commissioner's decision. Section 86.30(4), The Code. The burden of proof is on the claimant to prove some employment incident or activity was a proximate cause of the health impairment on which he bases his claim; a possibility is insufficient; a probability is necessary; and the commissioner's findings have the force of a jury verdict. Anderson v. Oscar Mayer & Co., 217 N.W.2d 531, 535 (Iowa 1974); Holmes v. Bruce Motor Freight, Inc., 215 N.W.2d 296, 301 (Iowa 1974).

II. In this jurisdiction a claimant with a pre-existing circulatory or heart condition has been permitted; upon proper medical proof, to recover workmen's compensation under at least two concepts of work-related causation.

In the first situation the work ordinarily requires heavy exertions which, superimposed on an already-defective heart, aggravates or accelerates the condition, resulting in compensable injury. See Littell v. Lagomarcino Grupe Co., 235 Iowa 523, 17 N.W.2d 120 (1945). Claimant in such a case is aided by our liberal rule permitting compensation for personal injury even though it does not arise out of an "accident" or "special incident" or "unusual occurrence." Olson v. Goodyear Service Stores, 255 Iowa 1112, 1116, 125 N.W.2d 251, 254 (1963); Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 552, 47 N.W.2d 236, 239 (1951); Almquist v. Shenandoah Nurseries, 218 Iowa 724, 729, 254 N.W. 35, 38 (1934).

Iowa's *Littell* rationale is paralleled in a portion of Professor Arthur Larson's attempt to fashion a logical working rule in heart cases. See 1A Larson's Workmen's Compensation Law § 38.83, p. 7–172:

"But when the employee contributes some personal element of risk—e. g., by having * * * a personal disease—we have seen that the employment must contribute something substantial to increase the risk. * * *

"In heart cases, the effect of applying this distinction would be forthright:

"If there is some personal causal contribution *in the form of a previously weakened or diseased heart,* the employment contribution must take the form of an exertion greater than that of nonemployment life. * * * Note that the comparison is not with *this employee's* usual exertion *in his employment* but with the exertions of normal *nonemployment* life of this or any other person."

See also Beck v. State, 184 Neb. 477, 168 N.W.2d 532 (1969).

In the second situation compensation is allowed when the medical testimony shows an instance of unusually strenuous employment exertion, imposed upon a pre-existing diseased condition, results in a heart injury. See Guyon v. Swift & Co., 229 Iowa 625, 295 N.W. 185 (1940).

III. The uncontroverted gist of the medical testimony in this case was that claimant had atherosclerosis, a fatty deposition in the walls of the coronary arteries. This in turn had progressed enough to create an insufficiency in blood supply to the heart muscle, depriving it of necessary oxygen and nutrients and causing it to emit pain signals. This was the angina pectoris diagnosed almost a year before the ultimate obstruction in the heart artery on August 20, 1971. This obstruction of course further deprived the heart muscle of nutrient material and oxygen. In this situation the heart's work load should be reduced to preserve its function and curtail irreversible damage. The eventual heart injury—myocardial infarction—does not occur at the first onset of chest pain but usually within the first one or two days thereafter.

In the case *sub judice* claimant never attempted to medically prove compensable injury under the *Littell* rationale; that is, to show that the usual strenuous exertions of claimant's employment would aggravate or accelerate the effect of his atherosclerosis to bring an earlier or more damaging myocardial infarction. Rather, he attempted to prove his particular activity on August 20 causally contributed to his injury. As indicated above, neither of his medical experts was willing to make that connection. See, however, Guyon v. Swift & Co., supra; Jones v. Industrial Commission, 81 Ariz. 352, 306 P.2d 277 (1957); Oklahoma Steel Castings Company v. Wilson, 348 P. 2d 1075 (Okla.1960); Shivers v. Biloxi-Gulfport Daily Herald, 236 Miss. 303, 110 So.2d 359 (1959).

Without medical evidence to support either of the above theories, the commissioner concluded claimant "did not sustain a personal injury arising out of and in the course of his employment on August 20, 1971." Apparently the devastating dearth of the evidence in this regard caused the commissioner to virtually overlook the uncontroverted medical evidence that claimant's continuing to work after the coronary onslaught would have aggravated the effect of the obstruction in the heart artery.

It has long been legally recognized that damage caused by continued exertions required by the employment after the onset of a heart attack is compensable. The industrial commissioner so held under facts strikingly similar to those in this case in Rogers v. Lake View Concrete Prod. Co., et al, 29th Biennial Report Iowa Industrial Commissioner, p. 36; see also Miller v. H. S. Holtze Construction Co., et al, 30th Biennial Report Iowa Industrial Commissioner, p. 27. This concept has found application in the following representative cases from other jurisdictions: Aetna Casualty & Surety Company v. Johnson, 278 F.2d 200 (6 Cir.1960); Southern Stevedoring Co. v. Henderson, 175 F.2d 863 (5 Cir. 1949); Dwyer v. Ford Motor Co., 36 N.J. 487, 178 A.2d 161 (1962); Kaufman v. Jewish Memorial Hospital, 18 A.D.2d 726, 234 N.Y.S.2d 456 (1962). See also Jones v. Industrial Commission, supra; Oklahoma Steel Castings Company v. Wilson, supra; Shivers v. Biloxi-Gulfport Daily Herald, supra; 1A Larson's Workmen's Compensation Law § 38.64(c), p. 7–145 ("The most obvious relevance of this element [continuing exertion after symptoms] is in showing causal connection between the obligations of the employment and the final injury; for if the workman, for some reason, feels impelled to continue with his duties when, but for these duties, he could and would have gone somewhere to lie down at once, the causal contribution of the employment to the aggravation of the condition is clear.").

The common knowledge that complete rest and immobilization are ordinarily prescribed for persons who are undergoing a heart attack has been judicially noticed. Johnson v. Aetna Casualty & Surety Company, 174 F.Supp. 308 (E.D.Tenn.1959); see Dwyer v. Ford Motor Co., supra, 36 N.J. at 505, 178 A.2d at 170.

IV. In this case the opinion of Dr. Banitt was based on a hypothetical question. The only objection lodged against it was the usual general objection we have repeatedly held insufficient. Ganrud v. Smith, 206 N.W.2d 311, 316 (Iowa 1973); Fischer, Inc. v. Standard Brands, Inc., 204 N.W.2d 579, 582–83 (Iowa 1973), and citations. Neither the employer nor the commissioner, then or at any subsequent time, has specifically found fault with the question, which had solid basis in the evidence. While not so detailed, commissioner's findings of fact closely parallel the assumed facts contained in claimant's hypothetical question.

The only specific reason advanced in the review decision for rejecting Dr. Banitt's uncontroverted medical testimony is contained in the sentence, "He could not state with certainty that continuing activity insured an infarction and that had immediate rest been instituted the infarction would not have occurred."

On cross-examination this medical expert did concede he could not state with *certainty* the infarction would not have occurred had immediate rest been instituted. He also responded that while "the continuing of his work would be in my opinion an aggravation of this in such a fashion that it would very probably worsen the amount of damage," he could be "absolutely certain" only upon postmortem examination.

If the commissioner rejected this testimony because the expert could not be "certain", he applied an erroneous evidentiary rule. The very nature of opinion evidence deprives it of the quality of absolute certainty. If it had the quality, it would not be an opinion. Shepard v. Carnation Milk Co., 220 Iowa 466, 262 N.W. 110, 114 (1935). The opinion of experts need not be couched in definite, positive or unequivocal language. Dickinson v. Mailliard, 175 N.W.2d 588, 593 (Iowa 1970).

Claimant forcefully argues Dr. Banitt's testimony could not be arbitrarily rejected by the commissioner, citing Merchant v. SMB Stage Lines, 172 N.W.2d 804, 807 (Iowa 1969) ("The matter of causal connection between decedent's fatal heart attack and this accident is not within the knowledge and experience of ordinary laymen, but is a question as to which only a medical expert can express an intelligent opinion."). See also Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 383, 101 N.W.2d 167, 171 (1960) ("In other words the causal connection between the fall and subsequent disability is essentially within the domain of expert testimony"), but cf. Bodish v. Fisher, Inc., 257 Iowa 516, 521, 133 N.W.2d 867, 870 (1965) ("However, the weight to be given such an opinion is for the finder of fact, and that may be affected by the completeness of the premise given the expert and other surrounding circumstances.").

The general rule, of course, is that expert opinion testimony, even if uncontroverted, may be accepted or rejected, in whole or in part, by the trier of fact. Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 857 (Iowa 1973); Olson v. Katz, 201 N.W.2d 478, 482 (Iowa 1972); Wells v. Wells, 168 N.W.2d 54, 59 (Iowa 1969); McCormick, Opinion Evidence in Iowa, 19 Drake L.Rev. 245, 271 (1970). But a study of our cases indicates greater deference is ordinarily accorded such testimony where the opinion necessarily rests on medical expertise. See Merchant v. SMB Stage Lines, supra; Wells v. Wells, supra, 168 N.W.2d at 59 ("* * * the courts in this jurisdiction hold opinions of medical experts in high regard * * *"); Bradshaw v. Iowa Methodist Hospital, supra.

In Catalfo v. Firestone Tire and Rubber Co., 213 N.W.2d 506, 510 (Iowa 1973) we referred to § 86.23, The Code, which requires a deputy industrial commissioner to make findings of fact and conclusions of law in proceedings before him. We reasoned the deference courts are required to give the deputy's fact findings in a direct appeal from a review-reopening decision

required a correlative duty on his part to state the evidence he relied on and specify in detail the reasons for his conclusions. We there held when a deputy disregards uncontroverted expert medical testimony he must say why he has done so.

■ Section 86.25, The Code, imposes an identical duty upon the industrial commissioner to set forth his findings of fact and conclusions of law. It is obvious he is under a similar obligation to state his reasons for disregarding uncontroverted medical testimony. See Langford v. Kellar Excavating & Grading, Inc., 191 N.W.2d 667, 669 (Iowa 1971); Rutledge v. Industrial Commission, 9 Ariz.App. 316, 451 P.2d 894 (1969); Hill v. Culligan Soft Water Service Company, 386 P.2d 1018 (Okla.1963); Jones v. California Packing Corp., 121 Utah 612, 244 P.2d 640 (1952); 3 Larson's Workmen's Compensation Law § 79.52, p. 194.

We conclude the commissioner in the case before us either rejected Dr. Banitt's opinion testimony through application of an erroneous rule of evidence or rejected it for reasons unassigned.

■ The district court was right in refusing to hold, on expert testimony alone, that claimant as a matter of law proved his injury arose out of and in the course of his employment. But this case should have been remanded to the commissioner for reconsideration of Dr. Banitt's testimony in light of the proper evidentiary rule, see Langford v. Kellar Excavating & Grading, Inc., supra, 191 N.W.2d at 668, or for supplemental decision showing the evidence he relied on, standards applied, and reasoning used in rejecting that testimony. Catalfo v. Firestone Tire and Rubber Co., supra, 213 N.W.2d at 510. It should be added the latter decision was not available when this matter was before the district court.

Affirmed in part, reversed in part, and remanded to the industrial commissioner with instructions.