VARIED ENTERPRISES, INC., d/b/a Private Carrier Personnel and Safeco Insurance Company of America, Appellants,

v.

Charles D. SUMNER and Robert Landess, Iowa Industrial Commissioner, Appellees.

No. 83–952.

Supreme Court of Iowa.

Aug. 22, 1984.

Rehearing Denied Sept. 17, 1984.

R. Ronald Pogge of Hopkins & Huebner, Des Moines, for appellants.

David C. Shinkle and Anna I. Shinkle of Shinkle & Shinkle, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McGIVERIN, and CARTER, JJ.

CARTER, Justice.

This appeal involves the application of our decision in *Sondag v. Ferris Hardware*, 220 N.W.2d 903 (Iowa 1974), to a novel factual situation. The industrial commissioner and district court applied that decision in a manner which rendered claimant's work aggravated myocardial infarction compensable as a permanent total disability. The employer and insurance carrier challenge that determination in this court. We affirm the judgment of the district court.

The claimant, Charles D. Sumner, suffered an acute myocardial infarction while driving a truck as part of his employment with Varied Enterprises, Inc. d/b/a Private Carrier Personnel (hereinafter PCP). The dispute between the parties concerns the interrelationship between the disability which resulted from the infarction and Sumner's employment with PCP. Sumner had been employed by PCP as a team truck driver for less than thirty days on October 11, 1979. On that date, while driving a truck pursuant to his employment with PCP, he began to experience chest pains. He believed it was only indigestion and continued driving. Although the pain continued and to some extent increased, he continued driving for two and one-half hours before pulling off the traveled portion of the roadway at a truck stop.

After stopping, Sumner drank a bicarbonate of soda, whereupon the pain became much worse. He then asked his partner, who was accompanying him in a team driving capacity, to summon emergency assistance. The evidence indicates that soon after receiving medical assistance Sumner was diagnosed as having incurred an acute myocardial infarction. A permanent and total industrial disability resulted.

At the hearing before the industrial commissioner, conflicting expert testimony was presented concerning whether Sumner's continued driving after the onset of the infarction materially aggravated the impact thereof in terms of resulting industrial disability. The industrial commissioner accepted the views of Sumner's expert that the continued driving did materially aggravate the impact of the infarction and increased the resulting disability. This finding was upheld by the district court on judicial review.

On appeal, PCP and its insurance carrier raise three issues: (1) whether there is substantial evidence in the record as a whole to support the commissioner's findings; (2) whether the commissioner misapplied the legal principles established in *Sondag* in concluding that Sumner's disability was fully compensable; and (3)

whether the commissioner erred in not apportioning Sumner's disability between that which would have resulted from the onset of the myocardial infarction in the absence of further aggravating activity and the increased disability caused by Sumner's driving after the onset of the infarction. We consider each of these issues separately.

I. *Whether the Commissioner's Material Findings are Supported by Substantial Evidence.*

■■■ Administrative findings of fact are binding on a reviewing court if they are supported by substantial evidence when the record is viewed as a whole. *Second Injury Fund v. Mich Coal Co.*, 274 N.W.2d 300, 303 (Iowa 1979); Iowa Code § 17A.19(8)(f) (1983). Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *City of Davenport v. Public Employees Relations Board*, 264 N.W.2d 307, 311 (Iowa 1979). The possibility of drawing two inconsistent conclusions from the same body of evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Id.*

Within the context of the foregoing standard of review, PCP and its insurance carrier challenge the evidentiary support for two of the commissioner's findings of fact. These are: (1) the commissioner's finding that Sumner felt impelled to continue driving despite his physical discomfort because of his concern about the effect of lost time on his probationary employment status with PCP, and (2) the commissioner's finding that Sumner's actions in continuing to drive after the onset of the myocardial infarction materially aggravated the effect thereof in terms of industrial disability.

A. *Findings on Sumner's Motive for Continuing to Drive.* The employer and insurance carrier assert that there is not substantial evidence in the record to support the commissioner's finding that the reason Sumner felt impelled to continue driving after the onset of symptoms was the demands of his employment. This challenge appears to be tied to our reference in

*Sondag*, 220 N.W.2d at 905, to the following observations expressed in 1A A. Larson, *The Law of Workmen's Compensation* section 38.64(c), at 7–145 (1972):

> The most obvious relevance of this element [continuing exertion after symptoms] is in showing causal connection between the obligations of the employment and the final injury; for if the workman, for some reason, feels impelled to continue with his duties when, but for these duties, he could and would have gone somewhere to lie down at once, the causal contribution of the employment to the aggravation of the condition is clear.

The employer and insurance carrier urge that the evidence in the present case suggests that Sumner's only reason for continuing to drive was the fact that he did not realize that there was anything seriously wrong with him. From this premise they urge that there was no impelling reason attributable to the employment relationship which caused him to continue working in the face of a severe health deprivation.

■■■ Sumner urges, and we agree, that the evidence does support the commissioner's finding that he felt impelled to continue driving because of the rather shaky nature of his probationary status with his employer. This evidence is found in the testimony of Sumner's partner that he had expressed concern to Sumner about the latter's apparent declining ability to drive for extended periods without rest and its effect on his continued employment. Moreover, we view the example set forth in the *Larson* treatise as only having reference to one type of situation which strongly demonstrates a causal contribution to employment. It does not purport to establish an absolute requirement that a claimant be motivated to continue working in the face of a known health deprivation in order to produce a compensable situation.

B. *Findings on Element of Causation.* As noted, both sides presented expert testimony on the issue of causation. Dr. Iannone, a board-certified cardiologist and Sumner's treating physician, testified that

the physical and emotional stress of the continued driving were significant factors "in precipitating and worsening the overall myocardial heart damage." Sumner's other expert witness was Dr. Kreamer, also a board-certified cardiologist. Dr. Kreamer stated that continuing to work after the symptoms of the infarction became apparent caused an aggravation to the myocardial damage. He based this opinion in part on the increased oxygen demands of the heart in making the turns required in driving a semi-truck which was not equipped with power steering. Neither Dr. Iannone nor Dr. Kreamer could specifically quantify the extent to which Sumner's continued operation of the truck increased the extent of his industrial disability, although they believed this to be substantial.

The employer's expert witnesses, Dr. Brown, a board-certified cardiologist, and Dr. From, a board-recertified internist, both opined that there was no causal connection between Sumner's employment and the infarction or any aggravation thereof.

█ Given the sharp contrast presented between the expert witnesses, PCP's challenge to the commissioner's findings can only be upheld if we are permitted for some reason to find that its experts must be believed as a matter of law or, in the alternative, that for some reason Sumner's expert witnesses must be disbelieved as a matter of law. We are unable to reach such a conclusion. The sharp split in the testimony appears to mirror the persisting cleavage in medical theory with respect to the interaction of stress, physical exertion and progressive heart disease. *See, e.g., City and County of San Francisco v. Worker's Compensation Appeals Board,* 22 Cal.3d 103, 108–11, 583 P.2d 151, 154–55, 148 Cal.Rptr. 626, 628–31 (1978); Larson, *The "Heart Cases" in Workmen's Compensation; An Analysis and Suggested Solution,* 65 Mich.L.Rev. 441, 473 (1967). We find that the commissioner was free to accept the views of Sumner's expert witnesses and that such views constitute substantial evidence in the record considered as a whole to support the commissioner's findings.

II. *Whether the Industrial Commissioner Misapplied Sondag in Determining that the Facts Created a Compensable Occurrence Under the Compensation Act.*

Next, PCP urges that the commissioner and the reviewing district court misapplied *Sondag* in reaching the result at which they arrived. Other than the issue of apportionment which is considered in the following division, the argument in this regard appears to be a mere restatement of the challenges to the factual premises of causation which we have rejected. The premises upon which this purported "misapplication of law" are based are totally inconsistent with the conclusions testified to by Sumner's expert witnesses. Appellants' argument in no way demonstrates that *Sondag* was misapplied but rather proceeds along a path which ignores those expert opinions in the present case which drew conclusions markedly similar to those expressed in *Sondag.*

III. *Whether the Commissioner Erred in not Apportioning Sumner's Disability Between that Which was Produced by the Onset of the Myocardial Infarction and that Produced by Continued Driving.*

PCP's last contention is that the commissioner erred in not limiting the award of benefits to only that part of Sumner's total disability caused by the aggravation which his experts related to the continued driving. Stated somewhat differently, it is their position that the commissioner and the court were required to carve out some portion of the total disability as attributable to the original onset of the infarction which all parties agree was a noncompensable event.

The primary authority relied upon by appellants in making this contention pertains to circumstances where two distinct injuries are suffered, each with a correlative measure of disability. *See, Rose v. John*

*Deere Ottumwa Works,* 247 Iowa 900, 76 N.W.2d 756 (1956).

A clear and helpful discussion of the precise problem which is presented is contained in 2 A. Larson, *The Law of Workmen's Compensation* § 59.22, at 10–365 (1981) where the author states:

> Apart from special statute, apportionable "disability" does not include a prior nondisabling defect or disease that contributes to the end result. Nothing is better established in compensation law than the rule that, when industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable....
>
> *The essential distinction at stake here is between a pre-existing disability that independently produces all or part of the final disability, and the pre-existing condition that in some way combines with or is acted upon by the industrial injury....*
>
> To be apportionable, then, an impairment must have been independently producing some degree of disability before the accident....

(Emphasis added.)

The principle which *Larson* describes limits apportionment to those situations where a prior injury or illness, unrelated to the employment, independently produces some ascertainable portion of the ultimate industrial disability which exists following the employment related aggravation. This is consistent with the rule which we adopted in *Rose,* 247 Iowa at 908, 76 N.W.2d at 760–61.

In the present case, the employer's claim for apportionment is not based upon Sumner's prior atherosclerotic condition which precipitated the myocardial infarction. The industrial commissioner found that there was no evidence from which it could be found that this diseased condition of Sumner's arteries independently produced an ascertainable industrial disability. That finding, which is not challenged, precludes apportionment based on the evidence of previously diseased arteries. But the employer argues that the initial infarction produced by the diseased arteries, which the parties agree was not a compensable event under *Sondag,* would have independently provided some portion of Sumner's ultimate industrial disability even in the absence of the aggravating activities upon which his claim has been allowed.

While we believe that the legal premises upon which the employer's arguments are based state a claim for apportionment under the principles previously discussed, we are convinced that the commissioner declined to apportion the disability because of his view of the facts rather than any misapplication of legal theory. The commissioner spoke directly to this point, stating:

> Since the medical opinions could not differentiate between the amount of damage caused by the continued exertions, this agency cannot interject or speculate on the apportionment of damage between the onset of the infarction and the aggravation caused by continued exertion.

We believe that this is a negative finding of fact by the commissioner which undercuts the legal premise upon which any claim of apportionment must rest. The appellants have presented no basis for overturning the decision of the commissioner or the district court.

AFFIRMED.