BRIAR CLIFF COLLEGE and United States Fidelity & Guaranty Company, Appellants,

v.

Lois CAMPOLO, Surviving Spouse of Charles Campolo, and Dependent Minor Children, Appellees.

BRIAR CLIFF COLLEGE and United States Fidelity & Guaranty Company, Plaintiffs,

v.

IOWA DISTRICT COURT In and For WOODBURY COUNTY, Honorable J.P. Kelley, Judge, Defendant.

Nos. 83–1460, 84–78.

Supreme Court of Iowa.

Dec. 19, 1984.

92

P.D. Furlong, Sioux City, and Curtis Hewett of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellants and plaintiffs.

Charles T. Patterson of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellees and defendant.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

Charles Campolo, an assistant professor of psychology at Briar Cliff College, died of cardiac failure shortly after his participation in an intramural basketball game on the college campus as a member of the faculty team. Lois Campolo, the surviving spouse, filed a petition for death benefits with the Iowa industrial commissioner pursuant to Iowa Code section 85.31 on behalf of herself and dependent children, Andrea J., Charles T., and Damon A., against Briar Cliff College, the employer, and United States Fidelity and Guaranty Company, the insurance carrier, seeking to recover workers' compensation benefits for the death. The deputy industrial commissioner's benefit award was affirmed in successive reviews by the industrial commissioner and the district court.

The employer and insurance carrier appeal the decision of the district court on judicial review. For simplicity, we will refer to appellants as the employer. The district court refused to allow the posting of a supersedeas bond during the pendency of the appeal; appellants challenge this action in a certiorari action. Pending our ruling, we ordered the execution of the appealed judgment stayed upon the filing of a surety bond by appellants.

*I. Appeal.* On appeal, the employer asserts claimants have failed to meet their burden of proof in two areas: (1) that decedent's participation in the basketball game was in the course of his employment; and (2) that the injury, if any, arose out of his employment. The hearing officer and the industrial commissioner held contrary to both of these claims, and the district court affirmed.

■ The district court reviews decisions of the industrial commissioner pursuant to Iowa Code chapter 17A. Iowa Code § 86.26 (1983). The scope of review by the district court pursuant to section 17A.19 and of our review on appeal pursuant to section 17A.20 is not de novo. The commissioner's findings have the effect of a jury verdict, and we broadly and liberally apply those findings in order to uphold rather

than defeat the commissioner's decision. *Beier Glass Co. v. Brundige*, 329 N.W.2d 280, 282 (Iowa 1983); *Ward v. Iowa Department of Transportation*, 304 N.W.2d 236, 237 (Iowa 1981). The commissioner's determination of a question of law is given careful consideration, but is subject to our review. *Beier*, 329 N.W.2d at 282.

■ *A. Course of his employment.* The employer first asserts that decedent's participation in the basketball game was not in the course of employment within the meaning of the workers' compensation law, but was a purely recreational activity which was not a part of decedent's expressed or implied duties as a professor. An employer is liable "for any and all personal injuries sustained by an employee arising out of and in the course of the employment...." Iowa Code § 85.3(1) (1983). The word "injury" includes death resulting from personal injury. Iowa Code § 85.61(5)(a) (1983). "The words *'personal injury arising out of and in the course of the employment'* ... include injuries to employees whose services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer...." § 85.61(6) (emphasis in original).

The industrial commissioner considered whether the decedent's participation in the faculty-student basketball game was in the course of his employment. In analyzing the applicable law, the commissioner referred to our statement that:

An injury in the course of employment embraces all injuries received while employed in furthering the employer's business and injuries received on the employer's premises, provided that the employee's presence must ordinarily be required at the place of the injury, or, if not so required, employee's departure from the usual place of employment must not amount to an abandonment of employment or be an act wholly foreign to his usual work. An employee does not cease to be in the course of his employment merely because he is not actually en-

gaged in doing some specifically prescribed task, if, in the course of employment, he does some act which he deems necessary for the benefit or interest of his employer.

*Bushing v. Iowa Railway & Light Co.*, 208 Iowa 1010, 1018, 226 N.W. 719, 723 (1929) (citations omitted). The commissioner also relied upon Larson's business-related benefit test which states that recreational or social activities are in the course of employment when "[t]he employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life." 1A A. Larson, Workmen's Compensation § 22.00, at 5-71 (8th ed. 1982). Stating that it was the "degree of employer benefit which heavily tips the scale in the claimant's favor" and "[a]nother factor weighing in claimant's favor is the special nature of a teacher's job," the deputy commissioner found claimant had established that the death had occurred in the course of decedent's employment. The commissioner affirmed on appeal.

We conclude that the commissioner applied the correct principles of law. Whether decedent's acts benefited his employer is a question of fact. Thus, we must consider the record to determine whether substantial evidence supports the commissioner's findings.

■ Decedent had been employed by Briar Cliff College for approximately nine years. The college is a four-year institution with an enrollment of 1350 students. Tuition provides 73 percent of the college's revenue; thus, student recruitment and retention are major concerns of the college to insure adequate enrollment and revenues. To improve student retention and recruitment of new students, the college seeks to distinguish itself by the quantity and quality of attention students receive from faculty members, including time spent with students outside class. The intramural basketball program gives students an opportunity to have personal contact with faculty members and makes a contribution to student retention.

The question to be considered on appeal is not whether the evidence supports a different conclusion, but whether the evidence supports the commissioner's findings. *Ward v. Iowa Department of Transportation*, 304 N.W.2d 236, 237-38 (Iowa 1981). Our review of the evidence indicates there was substantial evidence that the employer derived a substantial direct benefit from faculty participation in the intramural basketball program. Since a contrary result is not demanded as a matter of law, the commissioner's findings on this question are binding. *Id.* at 238.

■ *B. Causation.* The employer next asserts that claimants have not shown that decedent's injury, if any, arose out of his employment. The employer correctly states that the test to determine whether an employee's injury arose out of his employment is based on a causal connection between the conditions under which work was performed and the resulting injury. The employer argues that decedent had a preexisting, latent disease and that claimants made no showing the employment materially aggravated or accelerated the disease.

It is undisputed that the 40-year-old decedent had a heart condition before his participation in the basketball game. In reviewing the applicable law concerning an employee's preexisting heart condition, the commissioner relied upon our ruling in *Sondag v. Ferris Hardware*, 220 N.W.2d 903 (Iowa 1974). In *Sondag* we stated that a compensable injury may result when heavy exertions ordinarily required by work are superimposed on a defective heart, aggravating or accelerating the preexisting condition or "when the medical testimony shows an instance of unusually strenuous employment exertion, imposed upon a preexisting diseased condition...." *Id.* at 905. The commissioner also cited other authority tacitly approved in *Sondag:*

"But when the employee contributes some personal element of risk—e.g., by having ... a personal disease—we have

seen that the employment must contribute something substantial to increase the risk....

In heart cases, the effect of applying this distinction would be forthright:

If there is some personal causal contribution *in the form of a previously weakened or diseased heart*, the employment contribution must take the form of an exertion greater than that of nonemployment life.... Note that the comparison is not with *this employee's* usual exertion *in his employment* but with the exertions of normal *nonemployment* life of this or any other person."

*Id.* (citing 1A A. Larson, Workmen's Compensation § 38.83).

The commissioner then found that playing basketball is an unusually strenuous exertion within the meaning of *Sondag* and that claimants carried their burden of proving the existence of a personal injury, decedent's heart failure, which had a causal connection with his participation in the basketball game. We conclude that the commissioner correctly assessed our case authority. Therefore, the significant issue is whether sufficient evidence exists in the record to substantiate the findings of fact.

■ We do not agree with the employer's assertion that claimants failed to show a causal connection between the employment and resulting injury as a matter of law. We do agree with the employer's assertion, as did the commissioner, that claimants had to prove by a probability, not a possibility, that some employment incident or activity caused the death. *Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 297 (Iowa 1974). Because the injury in this case involved a preexisting heart condition, claimants had to prove that decedent suffered an aggravation to his already-impaired physical condition. *Barz v. Oler*, 257 Iowa 508, 512, 133 N.W.2d 704, 706–07 (1965).

■ Substantial evidence in the record verified the commissioner's findings: (1) that playing basketball was an unusually strenuous exertion within the meaning of *Sondag*, and (2) that decedent's heart disease was aggravated or accelerated by his participation in the basketball game. The basketball game consisted of running time, no time outs, two 20-minute halves and a 5-minute halftime. Decedent played both the first and second halves of the game, which supports the finding that this was an unusually strenuous exertion for a psychology professor. Within the last two minutes of the game, decedent was stricken and collapsed. Resuscitation measures were undertaken, and he was transported to the medical center where it was determined he had collapsed as a result of cardiac failure. Three cardiologists concluded that the strenuous physical activity from the basketball game gave rise to cardiac arrhythmia, cardiac failure and death. Thus, medical evidence supported the finding that decedent's heart disease was aggravated or accelerated by his participation in the basketball game.

Extensive evidence was admitted concerning decedent's preexisting condition and his life and activities outside of his employment. However, this evidence only creates an issue of fact concerning causation. We conclude that sufficient evidence supports the commissioner's finding that there is a probability strenuous exertion aggravated decedent's heart disease, causing a compensable personal injury.

■ *II. Writ of certiorari.* In the consolidated certiorari action involving the same parties, the employer challenges the trial court's refusal to allow the posting of a supersedeas bond during the pendency of the appeal from the judicial review decision. The employer urges that the district court lacked discretion to refuse to permit the posting of a supersedeas bond under Iowa Rules of Appellate Procedure 7 and 8. In response, claimants assert that public policy requires recognition of an exception to the applicability of Iowa Rules of Appellate Procedure 7 and 8 in workers' compensation cases and that the amount tendered as bond was inadequate. With the filing of this decision, the claim of inadequacy will be moot; thus, it will not be addressed.

After filing a notice of appeal of the district court decision, the employer presented a surety bond to the clerk of the district court who refused to approve the bond. The employer then filed an application for a hearing in district court to set the amount of the supersedeas bond. The district court denied the employer's application for a hearing and ordered the employer to continue weekly payments.

The employer subsequently filed a motion in this court for a supervisory order. We ordered the issuance of a writ of certiorari and stayed enforcement of the judgments. The employer now claims that the district court order is illegal and void because the court exceeded its jurisdiction by denying the application to set the amount of a supersedeas bond.

Iowa Rule of Appellate Procedure 7 states in pertinent part: "No appeal shall stay proceedings under a judgment or order unless appellant executes a bond with sureties...." Under rule 8, if the clerk refuses to approve a supersedeas bond, the aggrieved party may apply to the trial court for a review of the clerk's action. Rule 8 states in mandatory language that "the trial court shall determine the sufficiency of the bond, and if the clerk has not approved the bond, the court shall, by written order, fix its conditions and determine the sufficiency of the security...."

Despite this mandatory language, claimants maintain that the issuance of a stay is discretionary. Claimants note that we have made exceptions to rule 8 and assert that public policy and the policies underlying workers' compensation require that an exception should be made in this case.

Claimants compare this case to the exception to rule 8 created in *Scheffers v. Scheffers*, 241 Iowa 1217, 44 N.W.2d 676 (1950), for child custody appeals because this case also involves minor children. Unlike a child custody award, a workers' compensation award is nothing more than a property award. While payment of a forfeited bond could never restore to a parent and child the time lost pending appeal, it could compensate the recipient of a work-ers' compensation award for monies not received while the appeal was pending.

In support of their claim that the policies underlying workers' compensation require an exception, claimants refer to Iowa Code section 17A.19(5) which provides that the issuance of a stay at an earlier stage of judicial review (pending district court review of agency action) is discretionary. Claimants argue that the issuance of a stay following a district court decision while an appeal is pending should also be discretionary to forward the policy of section 17A.19(5), that adjudicated workers' compensation benefits should continue. Section 17A.19(5) is expressly limited to administrative action pending judicial review. The Iowa Rules of Appellate Procedure specifically address the issue of staying a judgment following a district court decision while an appeal is pending. We are not persuaded that section 17A.19(5) should have any effect on rule 8.

The trial court was in error when it refused to follow the mandatory terms of Iowa Rule of Appellate Procedure 8. The matter is now moot; no further action need be taken.

AFFIRMED AND WRIT SUSTAINED.